James J. STAWICKI,
Petitioner-Appellant,

v.

Thomas ISRAEL and the Attorney General of the State of Wisconsin, Respondents-Appellees.

No. 84–2868.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1985.

Decided Dec. 4, 1985.

Rehearing Denied Feb. 24, 1986.

Steven P. Weiss, Office of State Public Defender, Madison, Wis., for petitioner-appellant.

Michael L. Zaleski, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondents-appellees.

Before FLAUM, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and WYATT, Senior District Judge.*

FLAUM, Circuit Judge.

Petitioner-appellant James J. Stawicki appeals from the district court's denial of his petition for a writ of habeas corpus. Stawicki, who was convicted of sexual assault and first-degree murder in Wisconsin state court, asserts that his confession to the crimes should have been suppressed because the confession was involuntary, because he did not waive his Miranda rights before confessing, and because the confes-

* The Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

sion was tainted by earlier police questioning in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We affirm the district court's judgment.

## I.

On May 26, 1979, a young woman named Joanne Esser disappeared near Antigo, Wisconsin. The dark green Volkswagen that she had been driving when she disappeared was found with white bumper paint on its rear and side, indicating that it had been struck from behind. Newspaper accounts of Esser's disappearance stated that the police were looking for a four-wheel drive vehicle, light yellow or cream colored with a dark top and primer spots on one of its doors.

Just after 4:00 a.m. on May 31, 1979, Milwaukee police officers stopped a light yellow Chevrolet Blazer with a black top and primer spots on one of the doors. James Stawicki was the driver. When the police inspected the outside of the Blazer, they noticed that the right-hand side of the front bumper appeared to have been recently painted over with a lighter color paint or primer and that there were some streaks of green paint on the right front fender. In response to questioning by one of the Milwaukee detectives who soon arrived on the scene, Stawicki acknowledged that he had been driving the Blazer on the previous weekend and that he had been in the Antigo area. The detectives then searched the Blazer, with Stawicki's consent, and found a blood-stained towel that Stawicki volunteered was the result of cutting his hand with a screwdriver.

At around 6:00 a.m., the police officers asked Stawicki if he would accompany them to the police station. At the station, Stawicki waited in a conference room while the police sought further information on Esser's disappearance. When the police learned that Esser's body had been found the previous evening, they arrested Stawicki for her murder. At the time of his arrest, 7:32 a.m., the police informed Stawicki of his *Miranda* rights for the first time.

In developing an interrogation strategy, the police decided not to tell Stawicki that Esser's body had been discovered. Detective Sobczyk began interrogating Stawicki at 8:00 a.m., first establishing that they were both Catholics of Polish descent and then asking Stawicki to tell him the location of Esser's body so that she could be properly buried. When Stawicki denied having any knowledge of Esser, Sobczyk left the room at 8:30 a.m. and other detectives took over the questioning. An hour later, Stawicki asked to speak to Sobczyk. He then told Sobczyk where Esser's body could be found and fully confessed to her murder.

Stawicki was convicted by a jury of first-degree murder and first-degree sexual assault on April 15, 1980, in the Circuit Court for Langlade County, Wisconsin. He was sentenced to consecutive terms of life and twenty years in prison. The Wisconsin Court of Appeals affirmed Stawicki's conviction on December 22, 1981. The Wisconsin Supreme Court denied further review on February 8, 1982, and the United States Supreme Court denied certiorari on October 4, 1982. *Stawicki v. Wisconsin*, 459 U.S. 879, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

In June 1983, Stawicki filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. The district court denied the petition on August 7, 1984, finding no violation of Stawicki's constitutional rights.

## II.

Stawicki alleges that his confession should have been suppressed for three reasons. First, he argues that the detectives' failure to give him *Miranda* warnings at the scene of the stop violated his Fifth Amendment rights and tainted his subsequent confession. Second, he asserts that his confession was involuntary. Lastly, he

382

contends that he never waived his *Miranda* rights once he received the warnings.[1]

## A. *Effect of On-Street Statements*

Stawicki's primary argument is that the police were required to advise him of his *Miranda* rights on the street before asking him whether he had been driving the Blazer in the Antigo area on the previous weekend. Stawicki concludes that since his initial statements were taken in violation of *Miranda,* his subsequent stationhouse confession should be excluded as a tainted fruit of the illegal questioning even though the confession was made after the receipt of proper *Miranda* warnings.

Stawicki argues that the police were required to advise him of his *Miranda* rights before questioning him on the street because he was in custody at that time and because the detectives' questions constituted interrogation. The respondents assert that at the time they stopped Stawicki, their investigation into Esser's disappearance was focused on the Blazer rather than on Stawicki, and that their brief on-street questioning of Stawicki did not exceed the scope of a permissible *Terry* stop. We need not decide whether this initial questioning at the scene of the stop violated *Miranda,* however, for even if it did, the subsequent confession would not be suppressed for that reason alone. The Supreme Court recently rejected a "fruit of the poisonous tree" analysis for cases in which the initial questioning is voluntary, focusing instead on whether the second confession was itself voluntarily made. *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 1298, 84 L.Ed.2d 222 (1985). Since Stawicki has never argued that his on-street statements were involuntary, there is "no warrant for presuming coercive effect" on the second, fully-warned confession. *Id.* Instead of resolving the difficult issue of whether the police were required

to advise Stawicki of his rights before briefly questioning him at the scene of the stop, therefore, we shall focus on the voluntariness of the second confession itself, taking into account the entire course of police conduct involved in Stawicki's stop, questioning, arrest, and subsequent interrogation.

## B. *Voluntariness of Confession*

■ The question of whether Stawicki's confession was voluntary encompasses many factors. After holding a pre-trial suppression hearing on the admissibility of Stawicki's confession, the Wisconsin trial court found that Stawicki was twenty-three years old, had a high school equivalency certificate, was of average intelligence, and was a foreman at work. He had been arrested on five separate prior occasions. The trial court chose to believe the police officers' testimony that Stawicki appeared sober, alert, and showed no signs of emotional distress during the course of the morning's events rather than Stawicki's assertions that he was tired and had been drinking. Stawicki was given coffee and cigarettes at the police station and declined an offer of food. Although Stawicki was stopped at 4:00 a.m. and initially questioned sometime between 4:00 a.m. and 6:00 a.m., the length of the interrogation itself was not excessive, beginning at 8:00 a.m. and ending when Stawicki asked to speak to Detective Sobczyk at approximately 9:30 a.m. There was no evidence of physical coercion either on the street or at the police station. Although Stawicki was placed in the back of a police van on the scene for ten or fifteen minutes between 4:00 a.m. and 6:00 a.m., the police testified that they merely offered the van to Stawicki as a place to sit down, and that he readily agreed.

The police did use several strategies to induce Stawicki's confession, including

1. Stawicki also argues that his consent to search and impound the Blazer was not voluntary and intelligent. Because Stawicki was provided an opportunity for "full and fair litigation" of this Fourth Amendment claim in the Wisconsin courts, however, he cannot be granted federal habeas corpus relief on this basis. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976); *see also Sanders v. Israel,* 717 F.2d 422, 423–24 (7th Cir.1983), *cert. denied,* 465 U.S. 1033, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984).

withholding the fact that Esser's body had been found and subjecting him to a variation on the "Christian burial speech," *Brewer v. Williams,* 430 U.S. 387, 392–93, 97 S.Ct. 1232, 1236, 51 L.Ed.2d 424 (1977). Interrogation strategies such as these, however, do not automatically render a confession involuntary. Their use must instead be considered in conjunction with the rest of the circumstances surrounding a confession to determine whether the confession is voluntary. *See Holleman v. Duckworth,* 700 F.2d 391, 396 (7th Cir.), *cert. denied,* 464 U.S. 834, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). In this case, although Detective Sobczyk intended to appeal to Stawicki's emotions when he asked him to reveal the location of Esser's body so that she could receive a proper burial, Stawicki testified at the state suppression hearing that he thought Sobczyk's religious inferences were "stupid." This does not appear to be a case, therefore, where police strategies and inducements so overbear a suspect's will as to render a confession involuntary.

The final factors to be considered are that Stawicki's arrest was legal, he was fully advised of his *Miranda* rights before he gave his confession, and he testified that he understood those rights. The totality of these circumstances indicates that Stawicki's confession was voluntary.

## C. *Voluntariness of Waiver*

Stawicki further argues that his confession should have been suppressed because he never made a knowing and intelligent waiver of his *Miranda* rights. As the respondents concede, the police did not obtain either a written or oral waiver of Stawicki's *Miranda* rights after advising him of those rights and before questioning him about Esser's disappearance.

The Supreme Court held in *Miranda v. Arizona* that once a suspect is advised of his rights and given an opportunity to exercise them, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). The prosecution bears a heavy burden in these situations to demonstrate that the waiver is both knowing and intelligent. *Id.* at 475, 86 S.Ct. at 1628. An express waiver of a suspect's *Miranda* rights is not indispensable, however, to a finding of waiver. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

> The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, can never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

*Id.* The question of waiver must be determined, the Court continued, "on 'the particular facts and circumstance surrounding that case, including the background, experience, and conduct of the accused.'" *Id.* at 374–75, 99 S.Ct. at 1758 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). *See also Fare v. Michael C.,* 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979) (whether incriminating statements admissible on the basis of waiver is a question to be resolved on the totality of the circumstances surrounding the interrogation).

In the present case, the totality of the circumstances indicates that Stawicki knowingly and intelligently waived his *Miranda* rights. The Wisconsin trial court found that Stawicki had been fully advised of his *Miranda* rights and, as Stawicki himself testified at the pre-trial suppression hearing, that he understood the warnings. Although Stawicki never expressly waived his right to remain silent, his re-

quest to speak to Detective Sobczyk prior to confessing indicated his willingness to make a statement.

As far as Stawicki's background and experience are concerned, the trial court considered many of the same factors discussed above in connection with the voluntariness of the confession itself. Stawicki was twenty-three years old, of average intelligence, and had prior experience with the police. In one of his previous encounters with law enforcement, Stawicki had given a statement after receiving *Miranda* warnings. Under the totality of the circumstances, we conclude that the trial court did not err in holding that Stawicki knowingly and intelligently waived his *Miranda* rights.

### III.

In conclusion, we find no constitutional infirmity in the Wisconsin trial court's admission of Stawicki's confession into evidence. The district court's denial of Stawicki's petition for a writ of habeas corpus is accordingly AFFIRMED.