## GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff
## v.
## ANTHONY SAMUEL, Defendant

Crim. No. F92/1997

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

November 5, 1997

DEBORAH KLEINMAN-ROBINSON, ESQ., (Assistant Attorney General) St. Thomas, U.S.V.I., *for plaintiff*

RICHARD H. DOLLISON, ESQ., (LAW OFFICES OF D'AMOUR, JONES, STRYKER, DUENSING & NICHOLS), ESQS., ST. THOMAS, U.S.V.I., *for defendant*

SWAN, *Judge*

## MEMORANDUM OPINION

### BACKGROUND AND PROCEDURAL POSTURE

Before the Court is Defendant's Motion to Suppress a written confession he made while in police custody. Defendant asserts that his confession was taken in violation of his Fifth Amendment Rights under the United States Constitution.

The underpinning of defendant's contention is that at the time the confession was elicited from him, he was intoxicated or inebriated; therefore, he was not in complete command of his mental faculties. Defendant further asserts that any statement taken from him at the time of his intoxication was not the product of a voluntary, intelligent and knowing waiver of his Constitutional Rights. Consequently, his confession must be suppressed.

The Court held a hearing on Defendant's motion. For the reasons which follow, the Defendant's motion will be denied.

### FACTS

On March 3, 1996, defendant was arrested by police officers at his Estate Contant home and charged with the first degree murder of his wife. He was immediately handcuffed and transported by police vehicle to the police station at Nisky Center. Upon defendant's arrival at the police station, he was interviewed by Detective Henry Thomas, Jr.

Defendant was also orally mirandized or advised of his Constitutional Rights when he arrived at the police station. Initially, defendant declined or refused to sign a written statement offered by Detective Thomas, concerning events surrounding his wife's demise. He likewise refused or declined to sign a "waiver of rights" form. Subsequently, and without any prompting from the police officers, or anyone else, defendant informed Detective Thomas that he understood his right and that while he would not sign the waiver of rights form, he would tell Detective Thomas what happened concerning his wife's demise. Thereupon, defendant promptly told Detective Thomas that he murdered his wife.

4

After orally recounting for Detective Thomas the details of events surrounding his wife's demise, defendant voluntarily signed a two-part form entitled "Warning as to Rights" on the upper portion and "Waiver" on the lower portion. After signing the two-part form, defendant proceeded to give the Detective a written confession which he later attempted to repudiate and to have suppressed.

## ANALYSIS

The Miranda warnings are applicable only to custodian interrogation conducted by the police authority or Government agents and employees. Therefore, the initial issue is what constitutes a suspect or person being in "police custody." Two things are essential in determining whether a person is in police custody. First, what were the circumstances surrounding the interrogation. Second, given the circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 116 S.Ct. 457 (1995). Thus, whether a defendant is in custody is to be assessed on an objective basis, rather than on the subjective views of the officers or the defendant. *Stansbury v. California*, 114 S.Ct. 1526, 1529 (1994).

■ The Court finds that the defendant was "in custody" when he was handcuffed by the police, taken from his home, and transported in a police vehicle to the Nisky Center Police Station. A reasonable person would not have felt free to leave the police vehicle under the circumstances. Furthermore, a reasonable person would have no hesitancy in concluding that he was in police custody, if he was forcibly taken from his home by police officers, in handcuffs, and transported by police officers in a police vehicle directly to a police station. (See *United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir. 1993) in which the Court found that a suspect that was handcuffed, placed in the back of a squad car, and questioned by an FBI agent was "in custody.") The defendant's freedom of movement was hindered and impeded by the police officers' overt actions. Importantly, the defendant was the only suspect in his wife's murder, and he was being subjected to state interrogation at the police station, concerning the same murder.

5

The Court finds that a reasonable person experiencing the circumstances of defendant's confinement would not have felt free to leave the police station. Therefore, the Court concludes that defendant was in police custody on the morning of his arrest, when he was handcuffed, transported to the police station and thereafter, involuntarily detained at the police station. Moreover, when the police endeavored to interrogate or question the defendant concerning the circumstances of his wife's demise, his right to receive the Miranda Warnings vested. *United States v. Ali*, 68 F.3d 1468, 1472 (2nd Cir 1995).

Before signing the confession, defendant was informed of his Constitutional Rights, and he understood them. Defendant, who was forty-eight years old at the time of his arrest, speaks English, which is the language in which the content of the waiver form is written. The defendant's niece testified that he received several years of formal education in the British Educational System. He attained the educational functional equivalent of the initial grade in junior high school. Considering the testimony of a family friend, Mr. Adonis Francis, and the defendant's responses to Detective Thomas' questions, the Court concludes that defendant is conversant in the English Language.

Significantly, no evidence was adduced or elicited at the hearing which suggested or confirmed that defendant has a learning disability or is hearing impaired. No testimony was offered that defendant is otherwise afflicted with any mental disability which could have impaired his ability to understand what was said to him by Detective Thomas or that could have hampered his understanding of what was transpiring at the police station. Defendant, a security guard by profession, appeared to be in good physical condition. Defendant told the Detective that he understood the Miranda Warnings. The Court can find no reason to disbelieve him.

No witness, including the defendant, has testified that the defendant was threatened with bodily harm, intimidated, or coerced, subtlety or otherwise, in order to obtain his written confession. There is no testimony that what the police officers or detectives said to the defendant or their overt conduct or actions, individually or jointly, constituted threats or coercion directed towards the defendant.

6

There is no evidence that defendant was ever pressured by the officers, detectives or other police personnel during his interrogation. No weapon was exhibited or brandished in defendant's presence nor was a night stick, baton or police club menacingly displayed to him before or during his interrogation. No evidence was adduced at the hearing to remotely suggest that defendant was physically or mentally abused in order to procure his confession. See *United States v. Rico*, 51 F.3d 495, 507 (5th Cir. 1995). Likewise, there is no evidence that the police employed trickery or deceptive measures to surreptitiously obtain the defendant's written confession.

In assessing the validity of a waiver, courts analyze the totality of the circumstances surrounding the interrogation. *United States v. Rojas-Martinez*, 968 F.2d 415, 417 (5th Cir.), cert. denied, 113 St. Ct. 828 (1992) and 113 S.Ct. 103 (1993). The Courts must also consider the suspect's intelligence, age, education, and physical and mental conditions in evaluating a valid waiver. See *Stawicki v. Israel*, 778 F.2d 380, 382-84 (7th Cir. 1985) *cert denied*, 107 S.Ct. 150 (1986); *Coleman v. Singletary*, 30 F.3d 1420, 1426 (11th Cir. 1994) *cert denied*, 115 S.Ct. 1801 (1995).

To provide a valid waiver of rights prior to giving a statement, the Government must show that the relinquishment of defendant's rights was voluntary, and that the defendant had full awareness of the right being waived and the consequences of waiving that right. *Moran v. Burbine*, 475 U.S. 412,421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). *United States v. Jaswal*, 47 F.3d 539, 542 (2nd Cir. 1995). The Government must likewise prove that the waiver was knowingly, intelligently and voluntarily given. The standard for voluntariness of a waiver of right is the same standard for voluntariness as for a confession. Although not dispositive, a written waiver of one's Miranda rights is strong evidence that the waiver is valid. *United States v. Bernard*, 795 F.2d 749, 753 (9th Cir. 1986).

■ Defendant is reminded that an explicit waiver is not necessary to show that a defendant has waived his right to remain silent when he or she volunteers incriminating statements. *North Carolina v. Butler*, 99 S.Ct. 1755, 1757, 441 U.S. 369, 60 L.Ed.2d 286 (1979). Similarly, a valid waiver will be inferred when after a defendant is

7

administered the Miranda warnings, he agrees to speak with police officers. *United States v. Ramirez*, 79 F.3d 298, 305 (2nd Cir.) *cert. denied* 117 S.Ct. 140 (1996). In the case of *United States v. Barahona*, 990 F.2d 412, 418 (8th Cir. 1993), a valid waiver was inferred even though the defendant refused to sign a waiver form when he clearly understood his rights and cooperated with the police.

Defendant, on his own volition, volunteered to tell Detective Thomas of his role in his wife's death. Considering the circumstances of the Defendant's arrest, he could have surmised that it would have been futile to deny that he was his wife's assailant. Certainly, it did not escape the Defendant's knowledge that the evidence resolutely suggested that only he and his wife were at the couple's home at the time of the murder.

While defendant initially stated to Detective Thomas that he would not sign the waiver, he unequivocally told Detective Thomas that he would tell him what happened. Defendant then proceeded to tell Detective Thomas the circumstances surrounding his wife's demise and his dastardly role in the crime. Defendant voluntarily cooperated with the police, and he did so at a time when he was in full control of his mental faculties.

The Court concludes that there is a total lack of evidence to suggest that Defendant did not validly waive his Fifth Amendment Right. In *Correll v. Thompson*, 63 F.3d 1279, 1288 (4th Cir. 1995), the Court stated that a waiver of right to counsel before making a confession is voluntary, if the confession is the product of a free and deliberate choice rather than of intimidation, coercion or deception by police.

The Court further finds that the defendant was read his "warning of rights" or Miranda Rights prior to his making the confession. The Defendant made a free choice to waive his Constitutional Rights and to give a statement to Detective Thomas. In furtherance of the waiver, Defendant voluntarily signed the Waiver of Rights form tendered to him by the police officers. Accordingly, in reviewing the total circumstances of the Defendant's confession, the Court finds that Defendant validly waived his Fifth Amendment Right, and that his confession is devoid of any constitutional infirmity.

But, defendant has belatedly asserted that he was intoxicated or inebriated at the time of his interview with Detective Thomas which resulted in his signed confession. To determine whether a defendant is intoxicated at the time he gives a written confession, a court must make that determination based upon the totality of circumstances surrounding the confession. Admittedly, the defendant had been drinking in the early morning hours on the day of his confession. The defendant's confession, however, was given after the noon hour of the day of his arrest or more than eight hours after his alleged drinking. At least two police officers testified that while defendant had the smell of alcohol on his breath, his speech at the police station was not slurred nor incoherent. Defendant walked without staggering or without an unsteady gait. He never appeared to be disoriented. His answers to the Detective's questions were responsive, indicated total comprehension of the questions, and belies the specter of intoxication on his part. When the Defendant's confession was read to him by the Detective, he offered corrections to his confession, and he correctly reiterated what the Detective said to him.

Concededly, from the testimony, the defendant has a drinking propensity. Nonetheless, the protracted hours between his last drink and his confession, coupled with his overt conduct and conversations during the hours before his confession, allow this Court to conclude that defendant was not under the influence of intoxication at the time he made his written confession.

Court precedent is instructive on the issue of whether intoxication impairs a defendant's waiver of his Fifth Amendment Rights. For example, in *United States v. D'Antoni*, 856 F.2d 975, 982 (7th Cir. 1988), the Court found a valid waiver of Defendant's rights despite his alleged ingestion of drugs and alcohol and a lack of sleep prior to his confession, when the defendant testified that he had no alcohol intake six hours prior to his confession, and he understood the officer's questions. Likewise, the Court in *United States v. Lincoln*, 992 F.2d 356, 359, (D.C. Cir. 1993) *per curiam* found a valid waiver despite the defendant's intoxication when the defendant's actions were not impaired. By way of analogy, the Court in *United States v. George*, 987 F.2d 1428, 1430-31 (9th Cir. 1993), concluded that there was a valid waiver despite a drug overdose when the

defendant indicated that he understood his rights and was able to answer questions coherently.

The fact that the smell of alcohol is on the breath of someone who drinks liquor regularly is not sufficient to prove intoxication at a specific time. Defendant emphasized that a number of empty liquor bottles were found in his home at the time of his arrest. As a regular drinker, it would not be unusual to find empty liquor bottles in defendant's home. The unanswered question is when or on what days were the content of these bottles consumed by defendant. The important factors in evaluating the validity of defendant's confession are the number of hours between the defendant's last drink and his signing the confession, how much alcohol he had consumed the same day before he signed the confession, whether he was fully advised of and understood his rights, and whether he knowingly, voluntarily and intelligently signed the confession. To reiterate, defendant's confession was made several hours after his last alcoholic drink, spanning from the early morning hours to past the noon hour of the same day.

On the same day of his arrest, defendant was remanded to the Bureau of Corrections, because he was initially held without bail. Upon his arrival at the Bureau, as is the customary procedure, he was interviewed by a registered nurse. She, too, did not find the defendant to be intoxicated. The nurse remembered the defendant as having a coherent speech pattern upon his arrival at the Bureau. She also remembered defendant as not staggering or having an unsteady gait. The nurse further recalled that defendant did have a lucid and rational thought process during the interview she conducted with him. The nurse found nothing untoward with the defendant's demeanor.

■ Therefore, this Court concludes that defendant waived his rights under the above described circumstances and that he was not intoxicated when he made his written confession.

■ Lastly, Defendant has belatedly interjected the issue of his unstable mental state at the time he gave his confession to Detective Thomas and when he signed the written confession. Yet, the lucidity of his conversations, his remarkable comprehension of the subject matters he discussed with Detective Thomas before he

10

signed the waiver, and his demeanor during the interrogation by police, disavow an unstable mental state. The Defendant never appeared to be confused or disoriented. He appeared at all times to be extremely aware of the occurrences in his environment. The issues of the Defendant's inebriation and unstable mental state are advanced by Defendant in a desperate attempt to obfuscate a valid waiver of his Constitutional Rights.

## CONCLUSION

The Court, therefore, concludes that the defendant knowingly, intelligently, and voluntarily waived his Constitutional Rights and signed his written confession. The defendant knew the subject matter of the confession, and he knew why he was apprehended and transported to the police station. The Court further concludes that the defendant was fully aware of the consequences of his confession. Defendant was not intoxicated at the time he signed his written confession. Thus, defendant's waiver of his rights is a valid waiver. Accordingly, defendant's Motion to Suppress his confession is **DENIED.**