UNITED STATES of America,
Plaintiff–Appellee,

v.

Rodney SPRUILL, Defendant–
Appellant.

No. 01–2721.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 7, 2002.

Decided July 11, 2002.

Stephen Ehlke (Argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Tracey A. Wood, Van Wagner & Wood, Madison, WI, Ernesto L. Chavez (Argued), Kohler & Hart, Milwaukee, WI, for Defendants–Appellants.

Before MANION, ROVNER, and EVANS, Circuit Judges.

MANION, Circuit Judge.

On December 13, 2000, a federal grand jury indicted Rodney Spruill for the prostitution of minors and the transportation of minors across state lines for the purpose of prostitution. On January 11, 2001, Chicago police arrested Spruill, and, after a full day of interrogation by federal agents, Spruill signed a statement acknowledging his role in the prostitution ring. Subsequently, Spruill moved to suppress that statement contending that it was obtained in violation of his Sixth Amendment right to counsel. Following a hearing, the magistrate judge recommended granting the motion, but on April 13, 2001, the district court disagreed and issued an order denying the motion to suppress. Spruill entered a plea of guilty conditioned on the right to appeal the district court's order. On June 25, 2001, the district court entered a judgment of conviction and sentenced him to 57 months' imprisonment. Spruill now appeals both the district court's denial of his motion to suppress

and the sentence imposed by the district court. We affirm.

## I. Background

On December 13, 2000, a federal grand jury indicted Rodney Spruill in the Western District of Wisconsin with federal crimes related to child prostitution. Spruill's prostitution ring was brought to the attention of the government when a minor in Wisconsin, identified as L.B., contacted police after several conversations with Spruill and other prostitutes in his employ. During the telephone conversations with Spruill and other prostitutes, L.B. falsely represented to them that she would be willing to travel to Chicago. Subsequently, when one of Spruill's codefendants, Cynthia Stepanek, arrived in Wisconsin to take L.B. to Chicago, Stepanek was arrested by local police in a sting operation.

After Stepanek's arrest, a grand jury indicted Spruill with: (1) conspiring to transport individuals in interstate commerce with intent that those individuals engage in prostitution in violation of 18 U.S.C. § 2422(a); (2) knowingly transporting an individual in interstate commerce who had not attained the age of 18 years with intent that the individual engage in prostitution in violation of 18 U.S.C. § 2423(a); and (3) attempting to transport an individual in interstate commerce who had not attained the age of 18 years with intent that the individual engage in prostitution in violation of 18 U.S.C. § 2423(a). On January 11, 2001, the Chicago Police department arrested Spruill on the district court's indictment and held him overnight. At approximately 7:00 the next morning, F.B.I. agents Katherine Brusuelas and Joshua Skule picked him up and transported him to the F.B.I.'s main office in Chicago. Spruill did not say anything during the ride, nor was he asked any questions.

Upon arriving at F.B.I. headquarters, Spruill was informed that he, along with Stepanek, had been charged with prostitution of minors and the transportation of minors across state lines for the purpose of prostitution. The agents then read Spruill his *Miranda* warnings from a preprinted form. After Spruill was advised of his rights, he signed the *Miranda* form and agreed to speak with the agents without an attorney present. Spruill was fed breakfast and then interviewed for several hours. During this initial interview, Spruill acknowledged some awareness of the prostitution business, but implicated Stepanek.

The agents interviewed Spruill again during the early afternoon and he again implicated others in the prostitution ring and failed to acknowledge his own participation. Spruill was then left alone for several hours. In the meantime, the court scheduled an initial appearance for Spruill at 5:20 that afternoon pursuant to the Northern District of Illinois's "17–hour rule" which requires the government to present a defendant for an initial appearance within 17 hours after being taken into federal custody. Also, during this time, the U.S. Attorney's office contacted the federal defender's office and informed them that Spruill had been taken into custody. Heather Winslow, an attorney with the defender's office, was assigned to represent him at his initial appearance. Winslow arranged with the Assistant United States Attorney (AUSA) assigned to the case to meet with Spruill at 5:00 p.m. so that she could interview him prior to the hearing.

As 5:00 p.m. approached, the agents informed Spruill of his initial appearance and advised him that he had one last chance to recant his story or otherwise have his version of the events memorialized and given to the prosecuting attor-

neys. Spruill told them he decided to tell the truth about his participation in the prostitution ring. But, because the 17–hour deadline was at hand, the agents needed to have Spruill waive his right to an initial appearance in order to continue with the interview. Agent Brusuelas later testified that at that point Spruill was again advised that he had the right to speak with an attorney. He passed on that opportunity and read and signed a waiver of his previously scheduled initial appearance. Both the AUSA and Winslow were informed that the initial hearing would have to be rescheduled because Spruill was willing to cooperate with the agents. When she was informed of Spruill's decision, Winslow expressed concern to the AUSA that Spruill had waived his right to his initial appearance without benefit of counsel.

That evening, Spruill finally acknowledged his role in the prostitution ring and the agents prepared a written statement outlining Spruill's factual assertions. The first paragraph of the statement recites, in part, that "I have been advised of my rights to counsel and silence and wish to make a written statement." Spruill initialed and signed the document, adopting it as his own at 8:30 p.m.

Spruill made reference to an attorney only once from the time he was arrested on January 11 until he signed the statement on the evening of January 12. When the subject of a possible polygraph exam was raised during one of the day-time interviews, Spruill stated that he would only consent to an exam if he first could speak with an attorney. He agreed, however, to continue talking to agents without speaking with an attorney so long as no polygraph test was to be administered. Aside from this conditional request, Spruill never asked for counsel during the day or evening interviews. Spruill was arraigned on January 15, 2001, at which time he was officially appointed counsel for his defense. Subsequently, on March 8, 2001, Spruill filed a motion to suppress his statement and, after a hearing, the magistrate judge issued a report recommending suppression of the confession on Sixth Amendment grounds.

The district court rejected the magistrate judge's recommendation and denied Spruill's motion to suppress. On April 13, 2001, Spruill entered a guilty plea to count one of the indictment, conditioned on his right to appeal the denial of his suppression motion, and the remaining counts were dismissed. The district court then sentenced Spruill to 57 months in prison based on a total offense level of 24, which established a sentencing range of 51 to 63 months. The offense level included a two-point enhancement for enticing a second victim to participate in the prostitution ring. The second victim was identified as L.B., the minor who contacted police prior to any activity as a prostitute or interstate travel. Spruill timely filed an objection to the offense-level computation with the probation officer and the district court. Spruill now appeals the district court's denial of his motion to suppress his statement and the calculation of his offense level for sentencing purposes.

## II. Analysis

### A. Suppression of Statement

Spruill argues that the district court erred in denying his motion to suppress his statement because it was taken in violation of his Sixth Amendment right to counsel. Spruill argues that his confession should be suppressed because it was taken in a post-indictment interrogation and because the defender's office had assigned an attorney in his defense, his right to counsel had "accrued." He also argues that his waiver of his right to counsel was neither

knowing nor voluntary because of the government's coercive and devious tactics. We will address each of these issues separately.

■■■ The district court denied Spruill's motion to suppress his confession, and we must rely on its factual findings unless they are clearly erroneous. The ultimate issue of whether the confession was taken in violation of Spruill's Sixth Amendment rights, however, is a question of law subject to *de novo* review. *See, e.g., United States v. Carter,* 910 F.2d 1524, 1529 (7th Cir.1990). The Supreme Court held in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), that a confession elicited from an accused after the right to counsel has attached violates the Sixth Amendment if it was elicited outside the presence of counsel without a valid waiver. Under *Brewer,* we are required to answer three questions to determine whether a constitutional violation has occurred: "(1) whether the right to counsel had attached at the time of the confession; (2) if so, whether the accused executed a valid waiver of his right to counsel; and (3) absent a valid waiver, whether the police conduct violated the accused's right to counsel." *Quadrini v. Clusen,* 864 F.2d 577, 585 (7th Cir.1989) (citing 2 W. Ringel, *Searches & Seizures, Arrests and Confessions,* § 29.1 (2d Ed.1988)).

■■■ The first question then is whether the right to counsel had attached at the time of Spruill's confession. Under the Sixth Amendment, an accused person is entitled to counsel at critical stages of a criminal prosecution after the initiation of adversarial criminal proceedings "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Quadrini,* 864 F.2d at 585. Adversarial proceedings were initiated against Spruill when he was indicted with charges relating to child prostitution in December, 2000. In *Brewer,* the Court held that the interrogation of an accused is a "critical stage" of the criminal prosecution and that the Sixth Amendment right to counsel attaches at any interrogation after the initiation of formal criminal proceedings against the accused. *Brewer,* 430 U.S. at 398. Therefore it is clear that Spruill's constitutional right to counsel had attached at the time of the interrogation on January 12, 2001.

■■■ Next, under *Brewer,* we examine whether Spruill executed a valid waiver of his rights. The Sixth Amendment is not violated when an accused is interrogated without the presence of counsel, even after that right has attached, if the accused executes a voluntary, knowing and intelligent waiver. *Brewer,* 430 U.S. at 405–06. This waiver can be invoked without having obtained the advice of counsel previously. *Id.* Due to the importance of the Sixth Amendment in protecting the accused, "courts indulge in every reasonable presumption against waiver.... This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings." *Id.* at 404 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 238–240, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)) (internal citations omitted).

■■■ However, even if a suspect executes a valid waiver of his Sixth Amendment right to counsel, the government may not initiate questioning of the suspect absent the presence of counsel if that suspect has previously asserted his right to counsel. *See Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson,* the Supreme Court held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his

right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* This rule was expanded in *Patterson v. Illinois,* 487 U.S. 285, 291, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), to include requests for counsel in post-indictment interrogations. *Patterson* indicates that the government may question a defendant in a post-indictment setting, so long as he does not assert his right to counsel or otherwise waive his right to counsel. *Id.* at 290–91. Therefore, before we analyze whether Spruill executed a valid waiver of his right, we must first determine whether he asserted his right to counsel at any time during the interrogation thereby invalidating his subsequent waiver. This court reviews the question of whether a defendant invoked his Sixth Amendment right to counsel under an objective test, but reviews the district court's factual findings only for clear error. *See United States v. McKinley,* 84 F.3d 904, 909 (7th Cir.1996); *United States v. Meyer,* 157 F.3d 1067, 1079 (7th Cir. 1998).

Spruill argues that while he did not verbally invoke his right to counsel, his right to counsel was implicitly "asserted" when an attorney from the public defender's office, Heather Winslow, was assigned by the federal defender's office to be his counsel at his initial appearance. Spruill contends that because of this implicit "assertion," his subsequent waiver of his right to counsel upon signing his confession was invalid. In support of this argument, Spruill cites *Michigan v. Jackson,* 475 U.S. at 633, n. 6, as precedent for the argument that a verbal invocation of the right is only one factor among several to be considered when determining whether a defendant has asserted his right to counsel. In *Jackson,* the Supreme Court stated that "[i]n construing respondents' request for counsel, we do not, of course, suggest that the right to counsel turns on such a request."

*Id.* (citing *Brewer v. Williams,* 430 U.S. at 404 ("[T]he right to counsel does not depend upon a request by the defendant."); *Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) ("[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request")).

*Jackson* does not substantiate Spruill's claims. In *Jackson,* the Court observed that the abstract "right to counsel" is a constitutional right which does not turn on the defendant's assertion of the right, but rather accrues with the initiation of criminal proceedings. *Jackson,* 475 U.S. at 629–30. However, the Court put this abstract right into focus through analogy to the Fifth Amendment context where the assertion of the right to counsel made by a defendant must be an expression of the defendant's "desire to deal with the police only through counsel." *Id.* at 626 (quoting *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)). The Court also notes that "we construe the defendant's request for counsel as an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation." *Id.* at 633, n. 6. This rule was further illuminated in *Patterson* where the Court rejected an argument that police interrogation concerning a charged offense is prohibited once Sixth Amendment right to counsel attaches where the defendant has not invoked the right. *Patterson,* 487 U.S. at 290–91 (1988). *"Michigan v. Jackson* thus imposes two requirements for the application of the *Edwards* rule in the Sixth Amendment context. First, the right to counsel must have attached as to the offense in question at the time of the interrogation. Second, the defendant must have asserted the right to counsel at some point after the right attached and

before the interrogation began." *United States v. Avants*, 278 F.3d 510, 519 (2002). Thus, the assertion of the right by an affirmative request for counsel is a necessary step in Sixth Amendment jurisprudence. *See United States v. McKinley*, 84 F.3d 904, 908 (7th Cir.1996) ("Once the Sixth Amendment right to counsel has attached *and been invoked*, a subsequent waiver in the course of a police-initiated custodial interview about the pending charge is ineffective." (emphasis added)). The mere appointment of counsel, without the invocation of that right, simply does not constitute the assertion of the Sixth Amendment when the defendant has previously waived his right to counsel. Therefore, contrary to Spruill's argument, the appointment of an attorney, without some positive affirmation of acceptance or request of the assistance of counsel on the part of the defendant, does not constitute the assertion of one's Sixth Amendment right to counsel.

Spruill's argument also fails because the assignment of Heather Winslow by the federal defender's office was not an appointment of counsel for Sixth Amendment jurisprudence purposes. Counsel may only be appointed by a U.S. Magistrate or Court under 18 U.S.C. § 3006A(b):

> In every case in which a person entitled to representation under a plan approved [consistent with these rules] appears without counsel, the United States magistrate or the court shall advise the person that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the person waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the person is financially unable to obtain counsel, shall appoint counsel to represent him.

18 U.S.C. § 3006A(b); *see also United States v. Deluca*, 912 F.2d 183 (7th Cir. 1990).

Under the Northern District of Illinois's plan for the appointment of attorneys to indigent defendants pursuant to the Criminal Justice Act of 1964, only a federal judge or magistrate judge may determine the eligibility of an individual for appointment of counsel. *See Plan of the United States District Court for the Northern District of Illinois Pursuant to Criminal Justice Act of 1964*, http://www.ilnd.uscourts.gov/LEGAL/CJApage/cjapage.htm. After that determination it is the responsibility of the judge or magistrate judge to appoint counsel. *Id.* Heather Winslow was merely assigned to represent Spruill in the event that counsel would be appointed for him by the court. She was not officially appointed counsel for Spruill until January 15, 2001, at Spruill's initial appearance before the United States District Court for the Northern District of Illinois.

Nevertheless, Spruill presses on with his argument and relies on *United States v. Rodriguez*, 888 F.2d 519 (7th Cir.1989), as holding that defendant's assertion of his right to counsel does not depend on the verbal invocation of that right when counsel is appointed to a suspect. He argues that the federal defender's assignment of Heather Winslow as his prospective counsel constituted an assertion of his right to counsel under *Rodriguez*. In *Rodriguez*, we held that statements made by a criminal defendant during an interrogation, after an attorney had been appointed for him at his initial appearance before a magistrate judge, were inadmissible. *Id.* at 525–26. In *Rodriguez* the record on appeal did not disclose whether the defendant requested an attorney at his appearance or whether he was appointed an attorney despite rejecting counsel. *Id.* The record did indicate that prior to the hear-

ing, Rodriguez did state that he wanted a lawyer. *Id.* at 525. We held in that scenario that:

> When a person appears before a judicial officer and emerges with a lawyer, it is a fair inference *that he asked for counsel, thus asserting his Sixth Amendment right.* Maybe the transcript will show otherwise, but the prosecutor—whose burden it is to demonstrate the waiver of constitutional rights—must establish that by evidence. Silence in the record is not enough to support, let alone to compel, an inference that Rodriguez did not invoke his right to counsel. (Emphasis added.)

*Id.*

Contrary to Spruill's argument, *Rodriguez* appears to require an invocation of the right to counsel before barring post-indictment interrogation by police. *See id.* at 525–26 (7th Cir.1989). Implicit in the court's ruling is that even when an attorney is appointed to a criminal defendant by the court, a defendant's assertion of his Sixth Amendment right to counsel is still necessary to effectuate its protections. In *Rodriguez,* the record was unclear as to whether or not that assertion had occurred at the time of appointment, but because *Rodriguez* had previously requested counsel, the court assumed that a request had again occurred at the appointment without evidence to the contrary. *Id.* at 525.

■■■ Thus Spruill's reliance on *Rodriguez* is misplaced. Unlike *Rodriguez,* he was not appointed an attorney until after his interrogation by the government. Finally, there are no gaps in the record indicating that Spruill may have requested counsel. Whether or not the accused has actually invoked his right to counsel is determined under an objective standard which "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for

the assistance of an attorney." *Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). In *Davis,* the Supreme Court stated that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might be* invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* Spruill's only request that approximated an invocation of his right occurred when he indicated that he would like an attorney if he took a polygraph exam. He was not given the polygraph exam and agreed to continue answering questions without an attorney present. This conditional request for an attorney does not constitute an unambiguous request for counsel. *See, e.g., Connecticut v. Barrett,* 479 U.S. 523, 529–30, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (holding that defendant's request for an attorney before any written statement was provided did not constitute a request for an attorney for purposes of an oral confession); *United States v. LaGrone,* 43 F.3d 332, 338 (7th Cir.1994) (request to see attorney before signing consent to search did not prohibit further oral interrogation absent additional invocation of right to counsel). Therefore, Spruill did not assert his Sixth Amendment right to counsel prior to executing a waiver of that right because he failed to unambiguously express a desire for the assistance of an attorney at any time after his indictment. Absent such a request, the mere designation of counsel by the Federal Defender's office does not constitute an assertion for Sixth Amendment purposes.

■■■ Next we turn to the issue of Spruill's waiver of his Sixth Amendment right to counsel. Once the Sixth Amend-

ment right to counsel has attached by virtue of an indictment, the accused may execute a knowing and intelligent waiver of that right in the course of a police-initiated interrogation. *Patterson,* 487 U.S. at 291. Spruill contends that his waiver was not knowing or intelligent because the government circumvented his right to have counsel present and did so under circumstances that establish duress, coercion and trickery, whether overt or subtle. In *Patterson,* the Supreme Court addressed the question of a "knowing and intelligent" waiver of the right to counsel under the Sixth Amendment and held:

> an accused who is admonished with the warnings prescribed by this Court in *Miranda,* 384 U.S. at 479, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.

*Id.* at 296. The Court equates a knowing and intelligent waiver in the Sixth Amendment context with the Fifth Amendment context and states that " '[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.' " *Id.* at 297 (citing *Moran v. Burbine,* 475 U.S. 412, 422–423, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). We review whether a waiver was knowing and intelligent based on the totality of the circumstances surrounding the interrogation. *Stawicki v. Israel,* 778 F.2d 380, 383 (7th Cir.1985).

The record clearly establishes that Spruill was read his *Miranda* rights upon arrival at the F.B.I. offices and at that time he waived his right to counsel. Specifically, Spruill stated that he was willing to speak with agents and signed the waiver of rights form in the presence of the agents. At trial, F.B.I. Agent Brusuelas testified that on several occasions during the day she reminded Spruill that he could stop speaking at any time. Finally, he waived his right to counsel again in his confession, which he signed that evening, and which provided that he gave the statement "freely and voluntarily without threats of coercion or promises of any kind. I have been advised of my rights to counsel and silence and wish to make a written statement."

■ Moreover, nothing in the record indicates that the waiver of this right was coerced by the government. We analyze coercion from the perspective of a reasonable person in the position of the suspect. *See United States v. Brooks,* 125 F.3d 484, 492 (7th Cir.1997). Factors relevant to that determination are "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *See United States v. Huerta,* 239 F.3d 865, 871 (7th Cir.2001). Spruill is a 34–year–old man with a ninth-grade education and a high school equivalency certificate. A person with a high school equivalency certificate has been held to have enough education to understand the *Miranda* warnings. *Stawicki,* 778 F.2d at 382 (7th Cir.1985). He also has significant experience in the criminal justice system. There is no evidence that Spruill complained during the day about feeling ill or hungry and he was given food on several occasions. Nor is there any evidence that the interrogation involved physical punishment. Finally there is evidence that he was aware of his constitutional rights

throughout the day. While the full *Miranda* warnings were not re-administered prior to his confession, he was reminded of his right to an attorney.

Spruill also maintains that his confession should be suppressed because his last interview and written statement were obtained more than six hours after he was in federal custody, allegedly in violation of 18 U.S.C. § 3501(c). Section 3501(c) creates a six-hour "safe harbor" provision that provides that confessions given within six hours of the commencement of detention on a federal charge and an appearance before a magistrate are presumed to have been taken without unnecessary delay. *United States v. Carter,* 910 F.2d 1524, 1528 (7th Cir.1990). That section, however does not create a bright-line rule requiring the suppression of statements given after six hours of detention prior to the appearance before a magistrate. Rather, a delay longer than six hours "is merely another factor to be considered by the trial judge in determining voluntariness." *United States v. Gaines,* 555 F.2d 618, 623 (7th Cir.1977). *See also United States ex rel. Henne v. Fike,* 563 F.2d 809, 814 (7th Cir.1977) (nine hours between warnings and waiver not too long). In this case, Spruill specifically knew of his right to appear before a magistrate and he waived that right during the interrogation. While Spruill's detention prior to his confession was longer than six hours, there is nothing in the record to indicate that Spruill's waiver was coerced or involuntary.

■ Finally, Spruill alleges that his waiver was invalid as the government circumvented his assigned counsel's efforts to contact him during interrogation. *See Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). He contends that his waiver was not knowing due to the fact that an attorney had been assigned to meet with him prior to his hearing, but he was not informed of this assignment. Additionally, his designated attorney was not informed that Spruill was in fact being interrogated in her building. In *Moulton,* the court held "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." Due to the importance of the protections guaranteed by the Sixth Amendment, the Court held that "[o]nce the right to counsel has attached and been asserted, the State must of course honor it." However, in this case, the government did not circumvent Spruill's rights to an attorney. First, Spruill never unequivocally asserted his right to counsel. And second, at no time did Spruill's designated attorney make any direct attempt to contact him, nor did she request to meet with him after he had waived his right to his initial appearance. The F.B.I. could not have circumvented a meeting between an attorney and a suspect who did not request to meet with each other. When the totality of the circumstances is considered, it is apparent that Spruill's will was not overcome by the government through coercion or other tactics. Therefore he voluntarily and knowingly waived his right to counsel and decided to speak with agents. Because Spruill validly waived his right to counsel, his motion to suppress his confession was properly denied by the district.

## B. Sentencing Enhancement for Second Victim

Spruill also contends that his sentence was unlawfully enhanced by including a two-point enhancement for enticing a second victim. Spruill argues that there was not sufficient evidence to establish that the second victim, L.B., was traveling to

Chicago to work for him as a prostitute. Additionally, because she contacted local police and informed them of Spruill's activities, Spruill argues that she could not legally be a "victim" under U.S.S.G. § 2G1.1 because she never intended to travel to Chicago to work as a prostitute.[1] By including a two-point enhancement, Spruill's sentencing range was increased from 41–51 months, to 51–63 months. He was eventually sentenced to 57 months in prison.

■■■ This Court reviews a district court's application of the sentencing guidelines *de novo*, but defers to the court's finding of facts unless they are clearly erroneous. *United States v. Payton*, 198 F.3d 980, 982 (7th Cir.1999). "A factual determination is clearly erroneous only if, after considering all the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir.1995) (internal quotation marks omitted). Spruill's first argument is that the court did not establish by a preponderance of the evidence that he was enticing 15–year–old L.B. to travel to Chicago from Wisconsin to work for him as a prostitute. He maintains that the evidence could have equally established that she was merely traveling to visit her friend A.K., who was also a minor working as a prostitute for Spruill.

■■■ The district court did not clearly err in determining that A.K. was enticed to cross state lines for the purposes of prostitution because there was ample evidence to support the district court's determination. L.B. was contacted by her friend, and Spruill employee, A.K. on several occasions to come to Chicago and "earn lots of money." A.K. also spoke with Spruill about bringing L.B. to Chicago to work for him as a prostitute. Spruill informed A.K. that L.B. should only come to Chicago if she was pretty and eventually he sent another prostitute in his employ, Stepanek, to transport L.B. to Chicago. While Spruill never explicitly stated that he intended to have L.B. work for him as a prostitute, the preponderance of the evidence demonstrates that the district court did not commit clear error in determining that she was a victim.

■■■ Spruill also argues that because L.B. was cooperating with local law enforcement officials, and therefore never intended to work for him, she could not have been enticed to travel interstate for the purposes of prostitution. The commentary to U.S.S.G. § 2G1.1(d) provides that a sentencing court may consider an undercover law enforcement officer as a "victim" for sentencing purposes. Commentary to the Sentencing Guidelines is not merely legislative history and is binding on the courts unless it contradicts the plain meaning of the text of the Guidelines. *See Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *United States v. Garecht*, 183 F.3d 671, 674 (7th Cir.1999). While L.B. was not officially an undercover officer, the same principle underlying the commentary supports the conclusion that she was a victim. In this case L.B. was helping the police by revealing to them her conversations with Spruill and other prostitutes in his employ. The police were fully informed when she ar-

---

**1.** The commentary to U.S.S.G. § 2G1.1, defines a victim as:

"Victim" means a person transported, persuaded, induced, enticed, or coerced to engage in, or travel for the purpose of engaging in, prostitution or prohibited sexual conduct, whether or not the person consented to the prostitution or prohibited sexual conduct. Accordingly, "victim" may include an undercover law enforcement officer.

ranged for a meeting in Wisconsin with Stepanek for the purpose of taking her across state lines for the purpose of prostitution. By allowing the inclusion of undercover officers as victims for sentencing purposes, the Guidelines focus on the intended harm, and·not only the actual harm committed. Therefore, as instructed by the Guidelines, L.B. was properly considered a victim because Spruill intended that she become a prostitute. Therefore the court appropriately included L.B. as a second victim for sentencing purposes.

### III. Conclusion

Rodney Spruill's confession was not obtained in violation of his Sixth Amendment right to counsel. The district court also did not err in enhancing Spruill's sentencing level by two points for a second victim. We therefore AFFIRM.