**UNITED STATES of America**

v.

**Johnnie CORLEY, Appellant.**

No. 04–4716.

United States Court of Appeals, Third Circuit.

Argued March 6, 2007.

Opinion Filed Aug. 31, 2007.

Maureen Kearney Rowley, Chief Federal Defender, David L. McColgin, Assistant Federal Defender, Supervising Appellate Attorney, Elizabeth T. Hey, (Argued), Assistant Federal Defender, Federal Community Defender Office, Eastern District of Pennsylvania, Philadelphia, PA, for Appellant.

Patrick L. Meehan, United States Attorney, Robert A. Zauzmer, Assistant United States Attorney, Chief of Appeals, Kenya S. Mann (Argued), Assistant United States Attorney, Philadelphia, PA, for Appellee.

Before: SLOVITER and AMBRO, Circuit Judges, and THOMPSON,* District Judge.

OPINION OF THE COURT

AMBRO, Circuit Judge.

Johnnie Corley appeals his conviction and sentence for armed robbery and conspiracy to commit that crime. He presses three arguments: (1) his conviction must be vacated because his confessions should have been suppressed as evidence because they were made outside the six-hour period in 18 U.S.C. § 3501(c) and after the arresting officials violated Federal Rule of Criminal Procedure 5(a) by unnecessarily delaying in bringing him before a federal magistrate judge; (2) remand is required because (a) he was sentenced prior to the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125

---

* Honorable Anne E. Thompson, Senior United States District Judge for the District of New Jersey, sitting by designation.

S.Ct. 738, 160 L.Ed.2d 621 (2005) (making the United States Sentencing Guidelines advisory rather than mandatory), triggering this Court's decision in *United States v. Davis*, 407 F.3d 162 (3d Cir.2005) (*en banc*), that calls for a remand to resentence in most such cases, and (b) the District Court failed to resolve a disputed Guidelines adjustment; and (3) the District Court unlawfully delegated its statutory obligation under the Mandatory Victims Restitution Act of 1996 (MVRA) to set the schedule of restitution payments.

Because we believe that the first contention is governed by our decision in *Government of the Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir.1974), and we discern no error in the District Court's determination that Corley's confessions were voluntary, the delay in presenting him to a federal magistrate judge beyond that provided by 18 U.S.C. § 3501(c) will not result in suppressing his confessions. On the second issue Corley raises, he is not entitled to a remand because the District Court did not treat the Guidelines as mandatory, nor did it fail to resolve the disputed Guidelines adjustment. We hold, however, that the Court delegated, contrary to the MVRA, its duty to set a schedule of restitution payments, and we therefore remand to allow the District Court to set that schedule.

## I.  Facts

On June 16, 2003, three men robbed the Norsco Federal Credit Union in Norristown, Pennsylvania. Federal officials identified Johnnie Corley as a suspect in the robbery and were later informed of an outstanding bench warrant from a state court for him on a matter unrelated to the robbery. On September 17, 2003, at approximately 8:00 a.m., a joint operation of federal and state law enforcement agents attempted to execute the arrest warrant.

Corley resisted arrest and, following a physical altercation with an FBI agent during Corley's attempt to flee, was placed under federal arrest for assault on a law enforcement officer.

At approximately 11:45 a.m., the officers transported Corley to Thomas Jefferson Hospital in Philadelphia to receive medical treatment for injuries sustained during the altercation. By 3:30 p.m., after receiving several stitches, Corley was taken to the FBI office in Philadelphia for interrogation concerning the Norristown credit union robbery. He was informed that he was under arrest for assaulting a federal officer and also was under investigation for a robbery. At 5:07 p.m., Corley signed a waiver of his rights, *inter alia*, to remain silent and to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Shortly thereafter he confessed orally to the robbery. When asked to reduce his confession to writing, Corley stated that he was tired and requested to continue the following day. This was done, and the interrogation resumed at 10:30 a.m. on September 18, and Corley signed a written confession shortly thereafter. Not until 1:30 p.m. did he appear before a federal magistrate judge to be informed of his rights.

On November 20, 2003, a federal grand jury sitting in the Eastern District of Pennsylvania issued a three-count indictment against Corley, charging conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371 (Count One), armed bank robbery in violation of 18 U.S.C. § 2113(d) (Count Two), and the use and carrying of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) (Count Three). Corley filed, and the District Court denied, a motion to suppress his oral and written confessions pursuant to Rule 5(a) of the Federal Rules of Criminal Procedure. After a jury trial

held on September 27–28, 2004, he was convicted of Counts One and Two and acquitted of Count Three.

On December 21, 2004—after the Supreme Court decided *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), but before it decided *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)—the District Court sentenced Corley. In calculating the sentence, the District Judge explained that he viewed *Blakely* (discussed *infra* § III.A) as rendering the United States Sentencing Guidelines advisory:

> [U]ntil I'm told otherwise by the Third Circuit o[r] the Supreme Court, [I] take the position that the guidelines are merely advisory and that for sentencing purposes I have the upper limit[,] which is the statutory max to zero[,] and that when I have to figure and fix a sentence, what's on the table is all the conduct, prior history of this particular defendant, or any defendant that's in front of me, and I take all that into account when I fashion my sentence.

J.A. 462. However, the District Judge rejected Corley's argument that, after *Blakely*, any Guidelines enhancements must be specifically found by a jury beyond a reasonable doubt. After hearing the arguments of both parties, the Judge calculated Corley's advisory Guidelines range to be 140 to 175 months, and sentenced him to 170 months in prison. Regarding restitution, the Judge stated:

> The defendant shall make restitution to [Cumis Insurance, in] the amount of $47,532.36. The defendant shall make restitution and fine payments from any wages he may earn in prison in accordance with the Bureau of Prisons Inmate Financial Responsibility Program. The restitution and fines shall be due

immediately. Any balance remaining upon release from custody shall be paid at a rate of no less than $100 per month.

In addition to the imprisonment and restitution, Corley received five years supervised release, a fine of $5,000, and a special assessment of $200. He timely appeals.[1]

## II. The Admissibility of Corley's Confessions

The first issue in Corley's appeal involves the permissible length of post-arrest investigation and delay before arresting officers must present the arrested person to a federal magistrate judge. It requires us to interpret 18 U.S.C. § 3501, which governs the admissibility in federal criminal prosecutions of confessions given by persons arrested and in federal custody. The statute was enacted as part of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, 210–11, and the interaction of that statute with the preexisting law governing such confessions raises difficult legal questions.

### A. The Presentment Right and the Exclusionary Remedy

As a general matter, federal officials must take persons they arrest before a magistrate judge or other judicial officer without unnecessary delay. Before 1946, that obligation, known as "presentment," appeared in several statutes. *See McNabb v. United States*, 318 U.S. 332, 342 & n. 7, 63 S.Ct. 608, 87 L.Ed. 819 (1943) (citing statutes). The Federal Rules of Criminal Procedure first took effect in 1946, and Rule 5(a) provided in relevant part that

> [a]n officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a war-

---

1. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

rant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. That rule now provides in relevant part that "[a] person making an arrest in the United States must take the defendant without unnecessary delay before a magistrate judge ... unless a statute provides otherwise." Fed.R.Crim.P. 5(a)(1)(A).[2] The Supreme Court characterized Rule 5(a) as "a compendious restatement, without substantive change, of several prior specific federal statutory provisions," *Mallory v. United States*, 354 U.S. 449, 452, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), and explained the policy behind the presentment right as follows:

> Legislation such as this ... constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. For this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime.

*Id.* at 452–53 (quoting *McNabb*, 318 U.S. at 343–44, 63 S.Ct. 608).

In *McNabb* and *Mallory*, the Supreme Court held that when federal officers violated an arrested person's presentment right by delaying unnecessarily in taking him before a magistrate, the remedy is that confessions elicited from the arrested person before presentment could not be admitted into evidence at any subsequent criminal trial. *Mallory*, 354 U.S. at 455–56, 77 S.Ct. 1356; *McNabb*, 318 U.S. at 345, 63 S.Ct. 608. That exclusionary remedy became known as the *McNabb–Mallory* rule, and to courts applying that rule two propositions were clear: (1) a confession obtained before presentment and after an "unnecessary delay" would be suppressed, and (2) the paradigm of "unnecessary delay" is when it is solely for the purpose of eliciting a confession. *United States v. Alvarez–Sanchez*, 975 F.2d 1396, 1398 (9th Cir.1992), *rev'd on other grounds*, 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994); *Walton v. United States*, 334 F.2d 343, 346 (10th Cir.1964) ("Each case must be determined on its own facts[,] ... [b]ut if the delay in taking an arrested person before a committing magistrate is for the purpose of extracting a confession, it is a violation of Rule 5(a)."); *see also Mallory*, 354 U.S. at 454, 77 S.Ct. 1356 ("The arrested person may, of course, be 'booked' by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging

**2.** The term "magistrate" was substituted for "commissioner" in the 1972 amendments to the Rule to conform to the Federal Magistrates Act. *See* Fed.R.Crim.P. 5, Advisory Cmte Notes. In 2002, Rule 5(a) was amended in several respects, including dividing it into subsections and inserting the phrase "unless a statute provides otherwise." The Advisory Committee Notes indicate that this phrase was added to Rule 5(a)(1)(B)—which deals with arrests made outside the United States—"to reflect recent enactment of the Military Extraterritorial Jurisdiction Act (Pub.L. No. 106–523, 114 Stat. 2488) that permits certain persons overseas to appear before a magistrate judge by telephonic communication." As we will explain in further detail, *infra* § II.C., our Court has interpreted 18 U.S.C. § 3501 "as amending the meaning of 'unnecessary delay' as used in Rule 5(a), rather than leaving that term's meaning unchanged and simply allowing the Rule to be violated without sanction." *Gereau*, 502 F.2d at 923 n. 5.

statements to support the arrest and ultimately determine his guilt.").

## B. 18 U.S.C. § 3501

Eleven years after the Supreme Court decided *Mallory,* and two years after it decided *Miranda* (requiring, *inter alia,* warnings to persons in custody of their constitutional rights as to statements made to police without counsel present), Congress passed the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, part of which was 18 U.S.C. § 3501. Courts, including ours, recognize that § 3501 was a legislative reaction to *McNabb, Mallory,* and *Miranda. See Dickerson v. United States,* 530 U.S. 428, 436, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("Congress intended by its enactment to overrule *Miranda.*"); *Gereau,* 502 F.2d at 922 (Section 3501 "was expressly designed to provide a test different from *Mallory*'s for judging the admissibility in federal criminal prosecutions of confessions given during the period between arrest and arraignment before a magistrate."); *United States v. Halbert,* 436 F.2d 1226, 1231 (9th Cir.1970) ("[I]t is obvious that the prime purpose of Congress in the enactment of § 3501 was to ameliorate the effect of the decision in [*Mallory* ].").

Subsection (a) of the statute provides that, in a federal criminal prosecution, "a confession ... shall be admissible in evidence if it is voluntarily given," and that if a trial judge determines that a confession was voluntary, the jury must be allowed to hear relevant evidence on the issue of voluntariness and to give the confession such weight as the jury believes it deserves.

Subsection (b) instructs the trial judge to determine the voluntariness of a confession by "tak[ing] into consideration all the circumstances surrounding the giving of [it]." This provision notes a nonexclusive list of the circumstances that a trial judge may consider, including "the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment," and whether the defendant had been advised of his rights before making the confession.[3]

Subsection (c) provides:

In any criminal prosecution by the [federal government], a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, **shall not be inadmissible solely because of delay** in bringing such person before a magistrate judge or other officer ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person **within six hours immediately following his arrest or other detention:** *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is

---

3. In *Dickerson v. United States,* the Supreme Court understood subsections (a) and (b) as an effort to overrule *Miranda* by making voluntariness the sole test for admissibility of a confession and by making the presence or absence of *Miranda*-type warnings merely a factor in the voluntariness analysis. 530 U.S. at 436, 120 S.Ct. 2326. The Court held that *Miranda* was a constitutional decision, and that § 3501 was without effect to the extent that it could be read as overruling *Miranda. Id.* at 444, 120 S.Ct. 2326; *see also Missouri v. Seibert,* 542 U.S. 600, 609, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) ("*Dickerson* reaffirmed *Miranda* and held that its constitutional character prevailed against the statute.").

found by the trial judge to be reasonable **considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.**

(bold emphases added). Some courts have read that language as providing a "safe harbor" for confessions within six hours after arrest and before presentment. *See, e.g., United States v. Gamez,* 301 F.3d 1138, 1143 (9th Cir.2002) ("Section 3501(c) creates a six-hour "safe harbor" during which a confession will not be excluded because of delay."); *United States v. Spruill,* 296 F.3d 580, 590 (7th Cir.2002) ("Section 3501(c) creates a six-hour 'safe harbor' provision that provides that confessions given within six hours of the commencement of detention on a federal charge and an appearance before a magistrate are presumed to have been taken without unnecessary delay."). Under that reading, confessions made within the "safe harbor" are to be treated differently, for the purpose of determining their admissibility, from confessions made outside it.

## C. Our Precedent Interpreting Rule 5(a) and 18 U.S.C. § 3501

The interaction between 18 U.S.C. § 3501 and Rule 5(a) raises several difficult legal questions that have divided Courts of Appeals. To resolve this case, we must determine how to reconcile the "voluntariness" test of § 3501 with the "unnecessary delay" standard of Rule 5(a), and we must interpret the statement in § 3501(c) that certain confessions "shall not be inadmissible solely because of delay."

■ Our leading case addressing those questions is *Gereau.* Among the issues it addressed was the admissibility of defendant Gereau's confession, which was given more than six hours after his arrest, but which the District Court found to be volun-

tary. In its exposition of the law, our Court, per Chief Judge Seitz, explained:

The [Federal] Rules [of Criminal Procedure] explicitly recognize that the admissibility of evidence in cases governed by the Rules is subject to determination by acts of Congress. Thus, 18 U.S.C. § 3501 controls the admissibility in prosecutions subject to the Federal Rules, of defendants' statements made after arrest and before presentment to a magistrate, and must be viewed as altering [the] interpretation of Rule 5(a)'s direction that an arrested person be taken before a magistrate 'without unnecessary delay.'

. . . .

While the Federal Rules' provision regarding presentation before a magistrate is 'procedural,' unlike the 'substantive' rule of § 3501, the sanction imposed by federal courts for failure to comply with Rule 5(a) is suppression of statements taken during the period of 'unnecessary delay.' Since § 3501 regulates suppression of such statements, it should be viewed as amending the meaning of 'unnecessary delay' as used in Rule 5(a), rather than leaving that term's meaning unchanged and simply allowing the Rule to be violated without sanction.

502 F.2d at 923 & n. 5 (citation omitted). The panel then went on to address the admissibility of Gereau's confession, reasoning as follows:

Section 3501 makes admissibility of confessions dependent on their voluntariness. Delay in a defendant's presentment to a magistrate is only one factor relevant to voluntariness. Section 3501(c) modifies the trial judge's freedom to determine voluntariness by stating certain instances in which the judge cannot on the basis of delay alone find a statement to have been involuntary.

Statements not within the categories defined in § 3501(c) are not excluded but instead their admissibility is determined by the general standard of voluntariness set forth in § 3501(a) and (b). As set forth above, defendants have not demonstrated clear error in the district court's determination of voluntariness. We cannot, therefore, find that Gereau's statements ... were improperly admitted. *Id.* at 924 (citations omitted).

In *Gereau*, we read "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge" in subsection (c) to refer to the voluntariness standard in subsections (a) and (b). That reading follows from the statement in subsection (a) that "a confession ... shall be admissible in evidence if it is voluntarily given." Because subsection (a) makes voluntariness the sole criterion for admissibility of a confession, and subsection (b) further supports the statute's emphasis on voluntariness, it is certainly plausible to read the reference in subsection (c) to admissibility of a confession to refer to the voluntariness test. By our count, at least four other Courts of Appeals read the statute essentially the same way. *See United States v. Glover*, 104 F.3d 1570, 1583 (10th Cir.1997) ("Voluntariness is the sole test for admissibility of a confession.") (quoting *United States v. Shoemaker*, 542 F.2d 561, 563 (10th Cir.1976)); *United States v. Christopher*, 956 F.2d 536, 538–39 (6th Cir.1991); *United States v. Beltran*, 761 F.2d 1, 8 (1st Cir.1985); *United States*

*v. Bear Killer*, 534 F.2d 1253, 1256–57 (8th Cir.1976).[4]

Our statement in *Gereau* that § 3501 "amend[s] the meaning of 'unnecessary delay' as used in Rule 5(a)" meant that, in the context of deciding whether pre-presentment confessions given by defendants in federal custody are admissible at trial, § 3501 replaces the "unnecessary delay" standard with the voluntariness test in subsections (a) and (b) of the statute, in which the length and necessity of the presentment delay are factors in the analysis but not necessarily dispositive. The statute thus narrows the meaning of "unnecessary delay" by restricting it to delays that are part of making a defendant's statements "involuntary." In this vein, subsection (c) instructs courts that they may not find a confession involuntary "solely" because of the length of presentment delay where the confession is *otherwise* voluntary and where the delay is less than six hours (or longer than six hours but explained by transportation difficulties).

Under our reading of the statute, however, it is a misnomer to refer to the six-hour period in § 3501(c) as a "safe harbor," for although it reduces the likelihood that confessions given within six hours of arrest will be suppressed, it does not allow the police to act unreasonably in the pursuit of a confession. Delays designed to convey to the arrested person the message that his rights will not be honored until he confesses will affect the voluntariness of a

---

4. In his brief, Corley refers us to the Eighth Circuit Court's statement in *United States v. Hornbeck*, 118 F.3d 615, 619 (8th Cir.1997), that "under 18 U.S.C. § 3501, Hornbeck's statement was properly admitted only if the following two requirements were met: First, the delay in bringing Hornbeck before a magistrate was reasonable. Second, Hornbeck's statement was voluntary." We read that statement, however, to refer to the circumstances under which the six-hour period may be extended, rather than to refer to the standards that apply to a confession elicited outside that period. In the paragraph preceding that statement, the Court noted that "[a] confession made more than six hours after arrest or detention may nevertheless be admissible if the confession was voluntary and the delay was reasonable, *taking into consideration the means of transportation and the travel distance to the nearest magistrate.*" *Id.* at 618 (emphasis added).

confession. Police misconduct can render a confession involuntary, even if the defendant is presented to a magistrate within six hours of arrest. If, during a delay in presentment, police repeatedly interrogate a suspect and give the impression—explicitly or implicitly—that the promptness of presentment will depend on the suspect's cooperation, then that circumstance would weigh in favor of finding the confession involuntary. But, for example, if a delay in presentment is primarily spent providing an arrested person with necessary medical treatment, then that person is unlikely to suppose that he must confess to the crime before the police will honor his rights.

The bottom line is this: if an arrested person is detained for a substantial amount of time, then the longer the delay continues, the more likely it becomes that the arrested person will feel improper pressure to confess. *Cf. Bear Killer*, 534 F.2d at 1257 ("[T]he simple fact of custody is coercive ...; [i]t is a subtle form of pressure that plays against the will of the suspect."). Subsection (c) merely instructs trial courts that the inherently coercive effect of a lengthy delay in presentment is not sufficient, *standing alone*, to render a confession involuntary where the delay is either less than six hours or "reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer." 18 U.S.C. § 3501(c). But where there are reasons other than the length of the delay to find a confession involuntary, the fact that the delay was less than six hours (or longer because of

transportation difficulties) will not prevent a court from suppressing the confession.

## D. Corley's Arguments and the Law in the Second, Ninth, and D.C. Circuits

As explained above, our reading of the statute in *Gereau* begins with the language in subsection (a) that "a confession ... shall be admissible in evidence if it is voluntarily given," and reads the remainder of the statute in the context of that language. It therefore follows that "shall not be inadmissible solely because of delay in bringing such person before a magistrate judge" in subsection (c) refers to the voluntariness standard in subsections (a) and (b).

Corley disputes that reading, noting that three other Courts of Appeals—those in the Second, Ninth, and D.C. Circuits—understand that phrase in subsection (c) to refer to the *McNabb–Mallory* rule.[5] *See Alvarez–Sanchez*, 975 F.2d at 1402–03; *United States v. Perez*, 733 F.2d 1026, 1031 (2d Cir.1984); *United States v. Robinson*, 439 F.2d 553, 563–64 (D.C.Cir.1970); *see also United States v. Alvarez–Sanchez*, 511 U.S. 350, 361 & n. *, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) (Ginsburg, J., concurring) (noting the split of authority). Instead of reading § 3501 in the context of subsection (a), those Courts begin with the language of subsection (c), which gives three conditions for the admissibility of a confession, only one of which is voluntariness, another being unreasonable delay. From this, they draw the negative inference that the absence of any of those conditions is a sufficient reason for suppressing the confession. *See Perez*, 733

**5.** The Seventh Circuit Court has taken an alternative approach, which we will not discuss at length, holding that a trial judge has discretion whether to suppress confessions elicited outside of the six-hour period. *United States v. Gaines*, 555 F.2d 618, 623–24 (7th Cir.1977) ("Whatever the merits of the opposing approaches, we think it clear that a district judge retains discretion to exclude a confession where there is a delay in excess of six hours. However, the exercise of discretion depends on a congeries of factors, including such elements as the deterrent purpose of the exclusionary rule.").

F.2d at 1031. It therefore follows, they reason, that confessions given within the extendable six-hour period in subsection (c) are inadmissible only if they are involuntary; but confessions outside that period are subject to the *McNabb–Mallory* rule and may be excluded if they are either (1) involuntary, or (2) voluntary but elicited after a period of "unnecessary delay" within the meaning of Rule 5(a), as it was applied under the *McNabb–Mallory* line of cases. Put differently, these Courts believe that "section 3501 legislatively overrule[s] the *McNabb–Mallory* rule only to the extent of (1) unreasonable pre-arraignment, pre-confession delays of less than six hours and (2) reasonable delays in excess of six hours." *Id.* at 1035.

Courts adopting that reading support it with three principal arguments. First, to read the statute to hold that voluntariness is the sole criterion for admissibility of a confession, those courts argue, is to subject all confessions to the same test for admissibility, thus making subsection (c) redundant of subsection (a) and rendering the six-hour period superfluous. *See Alvarez–Sanchez,* 975 F.2d at 1400 ("The difficulty with construing § 3501(a) literally … is that to do so would create a clear conflict with § 3501(c) and would render the latter section meaningless."); *Perez,* 733 F.2d at 1031 ("[A]ny reading of section 3501 that disputes unreasonable delay as an additional independent basis for suppression reads subsection (c) out of the statute.").

Second, these courts assert, subsection (a), read literally—*i.e.,* that confessions offered into evidence are subject to no constraints whatsoever other than voluntariness—is inherently implausible. For example, no court to our knowledge has suggested that Congress meant to create a blanket exception to the Federal Rules

of Evidence for voluntary confessions. Courts have therefore looked to the statute's purpose and legislative history to discern a reasonable limit for the scope of that provision. That legislative history suggests that subsection (a) was primarily meant to overrule *Miranda,* and that subsection (c)—and only subsection (c)—was meant to limit *McNabb–Mallory. See Alvarez–Sanchez,* 975 F.2d at 1402 ("[W]hile sections (a) and (c) are facially incompatible, they can be best understood by construing section (a) to address concerns regarding a confessor's free will and section (c) to address concerns regarding delay in arraignment. Such a construction is most consistent with the legislative history … .").

Third, there is no necessary correlation between the Government's reasons for a presentment delay and the voluntariness of a confession. *Alvarez–Sanchez,* 975 F.2d at 1400 ("The reasons for the delay—whether the delay was necessary or unnecessary—have no bearing, of course, on the confessor's state of mind."); *Perez,* 733 F.2d at 1031 ("[T]he government's excuses for the delay have no logical or legal relevance to the defendant's voluntariness.").

Our dissenting colleague cogently argues that the Second, Ninth, and D.C. Circuit Courts have the better of the argument regarding the proper interpretation of § 3501. Were we writing on a clean slate, we might agree. As explained above, however, our Court has already resolved these issues in *Gereau.*

The primary basis on which Corley would have us distinguish *Gereau* is that it relied for its holding on Second and Ninth Circuit precedent, which the Courts of Appeals in those Circuits have since repudiated.[6] While that may be a reason to revisit

---

**6.** A District Court in our Circuit has made

that argument as well. *See United States v.*

*Gereau en banc*, it is not a legitimate reason for a panel of this Court to refuse to follow *Gereau*. Although this case raises difficult legal questions to which Courts of Appeals have given different answers, we are not bound by the decisions in our sister Circuits, and where no subsequent decisions of the Supreme Court or substantive amendments to the statute have undermined our holding in *Gereau*, we follow it. *See* Third Circuit I.O.P. 9.1; *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir.1996).

\* \* \* \* \* \*

In this case, the District Court found that although the police officers questioned Corley before presenting him to a magistrate judge, and although part of the delay in presentment was for the purpose of getting Corley to confess, his confessions were voluntarily given. Corley does not seriously dispute that finding, and we dis-

*Superville*, 40 F.Supp.2d 672, 687 & nn. 25–26 (D.V.I.1999) (*"Gereau* relied almost exclusively on opinions from other Courts of Appeals that since have recognized their decisions as erroneous, which gives pause to question *Gereau's* continued validity on this specific point.").

It is true that the Courts of Appeals for the Second and Ninth Circuits revised their readings of § 3501 without sitting *en banc*, but they did so against what those Courts viewed as a backdrop of circuit precedents that pointed in opposite directions. *See Alvarez–Sanchez*, 975 F.2d at 1404 ("On the basis of these ... cases, it might be possible to conclude either that the law of the Ninth Circuit is that *McNabb–Mallory* applies to non-safe harbor confessions or that we have an intra-circuit conflict."); *Perez*, 733 F.2d at 1033, 1035 (discussing eight prior Second Circuit cases ruling on the presentment issue). Here, by contrast, we have only *Gereau*, and its directive is clear.

At oral argument, Corley also suggested that *Gereau* might be distinguished on its facts because in that case there was no allegation that the law enforcement officers deliberately delayed presenting Gereau to a magistrate

cern no error in it. Following *Gereau*, we must therefore affirm Corley's conviction.[7]

## III.   Sentence

Corley argues that he is entitled to a remand for resentencing for two reasons: (1) he was sentenced before the Supreme Court decided *Booker*, and our decision in *United States v. Davis*, 407 F.3d 162 (3d Cir.2005) (*en banc*), requires resentencing, and (2) the District Court failed to resolve a disputed firearm objection, as Fed. R.Crim.P. 32(i)(3)(B) requires. We disagree with both contentions.

### A.   The Validity of Corley's Sentence Under *Booker* and *Davis*

In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court applied the Sixth Amendment principle it announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to invalidate a

judge for the purpose of extracting a confession. We are not persuaded. The *Gereau* panel directly addressed the question of how 18 U.S.C. § 3501(c) applies to pre-presentment confessions elicited outside of the six-hour period between arrest and presentment, and held that those confessions are subject to the "voluntariness" test in subsections (a) and (b) of the statute. 502 F.2d at 924.

7.   In light of our holding, it is unnecessary for us to address the District Court's holding that Corley's oral confession should be treated as having been made within six hours of arrest. Although that conclusion is contrary to the text of the statute—which provides that the only reasons for extending the six-hour period are those relating to transportation or to the availability of a magistrate judge or other officer—we understand the District Court to have held that both of Corley's confessions were voluntary. The second confession was clearly made more than six hours after arrest, and the District Court held that the delay in presentment still did not render Corley's confession involuntary.

sentence imposed under Washington state law. In so doing, it raised doubts about the constitutionality of the United States Sentencing Guidelines in light of their similarity to the Washington scheme. The Court resolved those doubts in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). It held that mandatory enhancement of a sentence under the Guidelines, based on facts found by a sentencing court alone, violates the Sixth Amendment. *Id.* at 244, 125 S.Ct. 738. The Court went on to hold that the remedy for this constitutional defect in the Guidelines is to render them advisory by excising from the Federal Sentencing Act those provisions that made the Guidelines mandatory. *Id.* at 245–46, 125 S.Ct. 738.

Within months after the Supreme Court decided *Booker*, we explained in *Davis* that "[d]irect appeals of sentences imposed before *Booker* generally present two kinds of claims: first, defendants whose sentences were enhanced by judicial factfinding raise Sixth Amendment claims; second, defendants who contend the District Courts erroneously treated the Guidelines as mandatory rather than advisory." 407 F.3d at 163–64. In reviewing claims of error of the second type,[8] we presume that a defendant sentenced under the mandatory Guidelines suffered prejudice. We do so because we "cannot ascertain whether the District Court would have imposed a greater or lesser sentence under an advisory framework." *Id.* at 164–65.

By contrast, "where . . . a District Court clearly indicates that an alternative sentence would be identical to the sentence imposed under the Guidelines, any error that may attach to a defendant's sentence under *Booker* is harmless." *United States v. Hill*, 411 F.3d 425, 426 (3d Cir.2005). It is true, as Corley points out, that where a district court imposed a sentence prior to *Booker*, and did not make sufficiently clear what sentence it would impose if the Guidelines were not binding, we have vacated the sentence and remanded for resentencing. Here, however, we are left with no doubt that the District Court considered the Guidelines advisory, and *Davis* therefore does not apply. Moreover, the Court here followed precisely the procedure we now require district courts to follow after *Booker*. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006) (courts must: first, calculate the applicable Guidelines range, second, formally rule on any departure motions, and third, exercise their post-*Booker* discretion, considering the factors in 18 U.S.C. § 3553(a), in setting a sentence). The District Court calculated the applicable Guidelines range and imposed a sentence that it considered appropriate in light of "all the conduct, prior history of this particular defendant, or any defendant that's in front of me, and I take all that into account when I fashion my sentence."

Corley contends, however, that the District Court's explanation is lacking because it did not cite 18 U.S.C. § 3553(a)

---

8. We do not understand Corley to allege the first type of error, but to the extent that he does, that argument cannot succeed because his sentence was below the statutory maximum authorized on the basis of the facts found by the jury. *See Booker*, 543 U.S. at 233, 125 S.Ct. 738 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *United States v. Grier*, 475 F.3d 556, 562 (3d Cir.2007) (*en banc*) ("Judicial factfinding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt.").

and did not go·into detail in explaining its reasons for the sentence it imposed. As we explained in *United States v. Cooper*, however, we do not require district courts to make specific findings on all of the § 3553(a) factors, so long as the record shows that the court took into account those factors properly raised by the parties at the time of sentencing. 437 F.3d 324, 329 (3d Cir.2006); *see also United States v. Dragon*, 471 F.3d 501, 505–06 (3d Cir.2006); *United States v. Jackson*, 467 F.3d 834, 842 (3d Cir.2006).

The Supreme Court explained recently that when a district court imposes a sentence within the advisory Guidelines range, the requirement in 18 U.S.C. § 3553(c) that a sentencing judge give a statement of reasons should not be read "as insisting upon a full opinion in every case." *Rita v. United States*, — U.S. —, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). Instead, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.*

In this case, we are satisfied that the record the District Court made at sentencing meets that standard and reflects that it gave appropriate consideration to Corley's arguments and to the information before it. For that reason, and for the reasons noted above, we reject Corley's argument that he is entitled to a remand under *Davis*.

## B. Whether the District Court Failed to Resolve a Disputed Firearm Objection

Federal Rule of Criminal Procedure 32(i)(3)(B) provides that the sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or de-termine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." The purpose of the Rule is to "ensure that the defendant's sentence is based on accurate and reliable information and that subsequent recipients of the report are aware of whatever resolutions occurred at sentencing." *United States v. Rosa*, 891 F.2d 1063, 1070 (3d Cir.1989) (quoting *Kramer v. United States*, 798 F.2d 192, 194 (7th Cir.1986)); *see also United States v. Furst*, 918 F.2d 400, 406 (3d Cir.1990). We enforce the Rule strictly, and "failure to comply with it is grounds for vacating the sentence." *United States v. Electrodyne Sys. Corp.*, 147 F.3d 250, 255 (3d Cir.1998); *see, e.g., United States v. Leahy*, 445 F.3d 634, 663–64 (3d Cir.2006) (remanding where the court of appeals could not determine what method the district court used to calculate the amount of loss in a bank fraud case); *Electrodyne*, 147 F.3d at 255 (remanding where the district court's basis for rejecting the defendant's arguments was ambiguous); *Rosa*, 891 F.2d at 1069–70 (remanding where a defendant disputed certain facts in the presentence report's narrative and the District Court did not expressly rule on them).

In this case, Corley contends that the District Court failed to rule expressly on whether he merited a three-level or a five-level enhancement under U.S.S.G. § 2B3.1(b)(2). That provision of the Guidelines calls for a five-level enhancement to the defendant's base offense level "if a *firearm* was brandished or otherwise possessed," but for a three-level enhancement "if a *dangerous weapon* was brandished or possessed." *Id.* §§ 2B3.1(b)(2)(C), (E) (emphases added). The transcript of the sentencing hearing shows unambiguously, however, that the District Court found that Corley possessed

a firearm rather than a dangerous weapon, and that it based that finding on Corley's statement and on the testimony of employees of the credit union that was robbed.

Both Corley and the Government indicated that they had no objection to the narrative portion of the presentence report. J.A. 461. As for the calculation of Corley's advisory Guidelines range, the parties disputed two matters: (1) whether to enhance Corley's offense level by two levels under § 3C1.2 for having endangered his daughter while resisting arrest, and (2) whether to enhance the offense level by five or three levels under § 2B3.1(b)(2). The Government's position at sentencing was that Corley's offense level should be 30, reflecting a two-level enhancement under § 3C1.2, and a five-level enhancement under § 2B3.1(b)(2). Corley responded that his offense level should be 26, reflecting no enhancement under § 3C1.2 (as his conduct in endangering his daughter was taken into account at his sentencing in a separate case for assaulting a federal officer), and a three-level enhancement under § 2B3.1(b)(2), because the jury acquitted him of the charge of carrying a firearm in furtherance of a drug trafficking crime, and there was scant evidence that he possessed a firearm instead of merely a dangerous weapon.[9]

The Government responded:

There's 3 reasons why. The conspiracy liability theory, the testimony of the employees of the credit union, and the defendant's own statement.

J.A. 475. The District Court resolved both disputes by stating:

If I were to apply the guidelines I will tell you right now[,] based on the defen-

dant's statements or written statements, the testimony in court, I would have—I would find that he's a category 6 and a level 28. I would not give him the 2 extra points on the fleeing because I think that was taken into account by Judge Bartle on his prior sentence. So as far as I'm concerned if I were to use the guidelines, he'd be a category 6, level 28, 140 to 175 [months].

J.A. 480–81 (emphasis added). In the second sentence of the quoted passage, the District Court unmistakably resolved the issue of the § 3C1.2 enhancement in Corley's favor. The remainder of the quoted passage, read in the context of the discussion preceding it, reflects that the Court decided the § 2B3.1(b)(2) enhancement against Corley, finding that he possessed a firearm instead of a dangerous weapon. We therefore hold that the District Court did not fail to comply with Fed.R.Crim.P. 32(i)(3)(B).

## IV. Restitution

■ The final issue we address is whether the District Court impermissibly delegated to the Bureau of Prisons its duty under § 206 of the MVRA, 18 U.S.C. § 3664(f), to set the manner and schedule of restitution payments during Corley's imprisonment. Though what the District Court did here makes sense practically, it runs afoul of prior precedent of our Court and the language of the MVRA. We therefore order a limited remand so that the District Court can set a restitution schedule.

In its sentencing order, the District Court ordered Corley to pay $47,532.36 (the amount of money taken in the credit

---

9. As noted, Corley argued at sentencing that *Blakely* precluded the District Court from applying any Guideline enhancements predicated on facts not specifically found by the jury, and that his base offense level was therefore

21. J.A. 464–65, 474. Once the District Court rejected that argument, however, Corley's position was that his base offense level should be 26. J.A. 474.

union robbery) in restitution, a fine of $500, and a special assessment of $200.[10] The presentence report—which the District Court adopted in large part[11]—indicated that Corley was indigent at the time of sentencing[12] and concluded that he "does not have the financial wherewithal to pay a fine within the sentencing guideline range, however[,] a nominal fine could be paid on an installment basis while in custody and while under supervision in the community."[13] PSR at 13, ¶ 56. The District Court calculated the fine under the Guidelines to be between $12,500 and $125,000, but imposed a fine of $500 and checked a box on the Statement of Reasons (Form AO 245B) to indicate that the fine was "waived or below the guideline range because of inability to pay."

Regarding the schedule of payments for restitution and the fine, however, the Court ordered "[p]ayment to begin immediately," subject to the following additional instructions:

> The defendant shall make restitution and fine payments from any wages he may earn in prison in accordance with the Bureau of Prisons Inmate Financial Responsibility Program. The restitution and fine shall be due immediately. Any balance remaining upon release from custody shall be paid at a rate of no less than $100.00 per month.

J.A. 15. Corley argues that the first sentence quoted above constitutes an impermissible delegation of authority to the Bureau of Prisons.

18 U.S.C. §§ 3556, 3663A(a)(1), in the MVRA require district courts to order restitution for certain crimes, including those—such as Corley's—"in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." *Id.* § 3663A(c)(1)(B). The court may not consider the defendant's economic circumstances when it calculates the *amount* of restitution, *id.* § 3664(f)(1)(A), but after setting the amount, the court "shall, pursuant to section 3572,[14] specify in the restitu-

10. The $200 special assessment was mandatory under 18 U.S.C. § 3013(a)(2)(A). *See* PSR at 15, ¶ 68.

11. In the Statement of Reasons, it checked a box indicating that it adopted the presentence report, with the only change being that "*Blakely v. Washington* was applied." In evaluating whether the District Court's order complied with 18 U.S.C. § 3664(f), we may therefore look to the statements in the presentence report that it adopted. *United States v. Lessner*, 498 F.3d 185, 201–03, 2007 WL 2257630, at **13–15 (3d Cir. Aug. 8, 2007) (examining the presentence report and the hearing transcript to determine whether the District Court complied with the requirement in § 3664(f) that it consider the defendant's ability to pay when setting the schedule of restitution payments).

12. The presentence report states that "[a] nationwide search for assets was negative," Corley had no credit history, and that social security records reflected no income for him during seven of the previous eleven years and

a total of approximately $5,600 during the other four years. PSR at 12–13, ¶¶ 53–55.

13. Although the presentence report notes that Corley did not file the affidavit required under 18 U.S.C. § 3664(d)(3), and states that "it should be assumed that the defendant has the financial wherewithal to pay a fine within the guideline range, as he has not established an inability to do so," PSR at 13, ¶ 54, the probation office appears to have concluded on the basis of its own investigation that Corley could not pay a fine within the Guideline range. PSR at 13, ¶ 56.

14. 18 U.S.C. § 3572(d)(1) provides that a defendant sentenced to pay a monetary penalty "shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments." If the sentencing court allows the defendant to defer payment in any way, "the length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made." *Id.*

tion order the manner in which, and the schedule according to which, the restitution is to be paid" in consideration of the defendant's current and anticipated financial situation. *Id.* § 3664(f)(2) (footnote added).

In our decisions interpreting the MVRA, we have held that the plain language of section 3664(f)—stating that "the court shall" order restitution and specify the manner and schedule of payments—means that ordering restitution is a judicial function that cannot be delegated, in whole or in part. *United States v. Coates,* 178 F.3d 681, 684–85 (3d Cir.1999); *see also Lessner,* No. 06–1030, 498 F.3d at 201–02, 2007 WL 2257630, at **13–14 (citing *Coates* ). In *Coates,* we held that it was plain error for the District Court to direct the defendant to pay a fixed sum without indicating a payment schedule. 178 F.3d at 684. We explicitly rejected the Government's alternative argument that "through its silence, the Court delegated responsibility to establish a payment schedule to the probation office." *Id.* We held that any such delegation was impermissible because "the fixing of restitution payments is a judicial act that may not be delegated," and that "the plain language" of § 3664(f) "contradicts, and thus overrides," the federal regulations permitting the Bureau of Prisons to make payment schedules for restitution through the IFRP, 28 C.F.R. §§ 545.10–11. *Id.* at 685.

Other courts of appeals have found impermissible delegations of authority under similar circumstances. *See, e.g., United States v. Gunning,* 401 F.3d 1145, 1150 (9th Cir.2005) (finding impermissible delegation where the restitution order failed to provide a payment schedule during the period of the defendant's incarceration);

*United States v. Overholt,* 307 F.3d 1231, 1255 (10th Cir.2002) (finding impermissible delegation where the restitution order directed that "[r]estitution shall be paid in full immediately[, and a]ny amount not paid immediately shall be paid while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program."); *United States v. Pandiello,* 184 F.3d 682, 688 (7th Cir.1999) (same, where the restitution order directed payment "in equal monthly installments during the period of incarceration through the Inmate Financial Responsibility Program," without fixing the amount of the installments).

We are compelled by our holding in *Coates* to find that there was an impermissible delegation here. Although the District Court discharged its responsibility to fix the amount of restitution and the schedule of payments once Corley is released, by its terms the order delegates to the Bureau of Prisons the task of determining how Corley will pay his obligations while he is in prison. As such, we must order a remand.

Against that conclusion, the Government argues that the District Court's order was proper because it ordered that "[t]he restitution and fines shall be due immediately." Because the MVRA permits sentencing courts to order immediate payment, rather than payment on an installment schedule, the Government argues, the District Court may order immediate payment with the understanding that the defendant will make payments to the extent he can in good faith. The Bureau of Prisons may permissibly ensure through the Responsibility Program that the defendant makes satisfactory progress toward his obligations while he is in prison.

§ 3572(d)(2). The court may order payment in a single lump sum, periodic payments, "in-kind" payments, or—if the defendant is indigent—"nominal periodic payments." *Id.* § 3664(f)(3)(A)(B).

We disagree. In support of its argument, the Government relies on three of our recent non-precedential opinions.[15] By the very fact these opinions are not precedential, they do not bind our Court. The principal case that supplies the reasoning for those opinions is *McGhee v. Clark*, 166 F.3d 884 (7th Cir.1999). In *McGhee*, however, the defendant's conviction came before the effective date of the MVRA, and he was therefore sentenced under the MVRA's predecessor statute, the Victim and Witness Protection Act of 1982 (VWPA), Pub.L. No. 97–291, 96 Stat. 1248. Under the VWPA, the sentencing court was not required to set the schedule of restitution payments. *See United States v. Ahmad*, 2 F.3d 245, 249 (7th Cir.1993) (Easterbrook, J.) ("Yet § 3663 does not require courts to establish schedules of any kind. A judge 'may', but need not, establish a schedule."). Although the court could not explicitly delegate the scheduling of payments to the probation office, *United States v. Graham*, 72 F.3d 352, 356–57 (3d Cir.1995), it could specify the amount due without elaboration. As Judge Easterbrook explained:

> A judgment in civil litigation specifies the amount due without elaboration. If immediate payment proves impossible, accommodation will occur in the course of collection. A judgment creditor will garnish the judgment debtor's wages and collect incrementally, even though the court has not said a word about installments. Just so with criminal restitution. If the sentence specifies the amount of restitution, without elaboration, and makes payment a condition of supervised release, the probation officer will assess the defendant's progress toward satisfaction of his debt, and if the defendant is not paying what he can the

probation officer will ask the judge to revoke or alter the terms of release. Then the judge may make the order more specific or, if the defendant has not paid back what he could in good faith, may send him back to prison. Everything works nicely without any effort to establish installments on the date of sentencing and without delegating a judicial function to the probation officer.

*Ahmad*, 2 F.3d at 249. Under the MVRA, however, that option is no longer available. *See United States v. Davis*, 306 F.3d 398, 425–26 (6th Cir.2002) (discussing the differences between the VWPA and the MVRA); *United States v. McGlothlin*, 249 F.3d 783, 785 (8th Cir.2001) (same); *Coates*, 178 F.3d at 684 (rejecting the argument that a district court may satisfy its obligation under 18 U.S.C. § 3664(f)(2) by specifying the amount due without elaboration). Section 3664(f)(2) requires the sentencing court to "specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid," in consideration of the defendant's economic circumstances. Although the court may order immediate payment in full of the entire amount of restitution, *id.* §§ 3572(d)(1), 3664(f)(3)(A), it may only do so "in consideration of" the defendant's finances. *Id.* § 3664(f)(2); *see also Coates*, 178 F.3d at 684 ("Contrary to the government's suggestion, however, this provision [§ 3572(d) ] in no way eliminates the district court's obligation under section 3664—'Procedure for issuance and enforcement of order of restitution'—to consider the defendant's financial situation and schedule restitution payments accordingly.").

In this case, the presentence report—which the District Court adopted—reflected that Corley was indigent and that

---

**15.** *See United States v. Jackson–El*, 179 Fed. Appx. 147 (3d Cir.2006); *United States v.* *Walker*, 149 Fed.Appx. 55 (3d Cir.2005); *Henry v. Apker*, 128 Fed.Appx. 895 (3d Cir.2005).

any payments he could make toward his restitution obligation would necessarily come almost entirely from any wages he might make in prison. The District Court's order reducing the amount of Corley's fine, directing that he "make restitution and fine payments from any wages he may earn in prison in accordance with the Bureau of Prisons Inmate Financial Responsibility Program," and ordering him to pay in installments upon his release from prison, reflects that understanding. Because the District Court apparently understood that Corley could not make immediate payment in full, it was required under § 3664(f)(2) to set a different schedule of payments. As the Eleventh Circuit Court has explained, orders directing "immediate" payment under such circumstances are indistinguishable in principle from outright delegations of authority to the Bureau of Prisons:

> [I]f the statute does not permit delegation to the probation office, we cannot endorse a restitution order requiring "immediate" payment with an informal understanding that the probation office shall set a payment schedule. Obviously, the availability of such an option would in practice defeat the statutory requirement that the court establish any installment schedule.

*United States v. Prouty,* 303 F.3d 1249, 1255 (11th Cir.2002). That appears to be what happened here.

We understand that our result may cause practical difficulties for district courts in the future. In this case, the District Court had a limited amount of information before it at the time of sentencing, and could not predict with any certainty whether Corley would choose to participate in the Responsibility Program, how much he would earn if he participated, or when he would be paid. It is therefore difficult to fault the Court for linking Corley's payment schedule to the contingency of his earning wages in prison.[16]

The District Court is not completely without assistance at the time of sentencing, however. To aid it in setting an appropriate payment schedule, § 3664(a) and Fed.R.Crim.P. 32(c)(1)(B), (d)(2)(B) contemplate having the probation office investigate various circumstances pertinent to restitution, including the defendant's economic situation, and to report its findings in the presentence report. Section 3664(d)(3) requires defendants to prepare and file with the probation officer an affidavit detailing their financial resources.

---

**16.** It appears from the presentence report that the Bureau of Prisons enjoys relatively little discretion under the Responsibility Program. According to the presentence report, Corley would likely earn approximately $300 per year in prison, of which the Bureau of Prisons would apply a minimum of $100 and a maximum of 50% toward Corley's restitution payments. Fifty percent of $300 is $150, so to the extent that the District Court's order delegated any responsibility to the Bureau of Prisons, that delegation likely consists only of allowing the Bureau to decide precisely what amount between $100 and $150 *per year* Corley should pay toward his total obligation of $48,200.36.

The Eighth Circuit Court has approved of a restitution order under similar circumstances, where the district court ordered that, during the defendant's incarceration, restitution would be paid "on an installment basis in the way the Bureau of Prisons handles this through its Inmate Financial Responsibility Program at the rate of no less than 50% of the funds available to defendant during incarceration." *United States v. Vanhorn,* 344 F.3d 729, 730 (8th Cir.2003). Judge Bye dissented, however, noting that "[i]t is entirely up to the Bureau of Prisons to choose an amount between 50% and 100% of the funds available to Vanhorn," and opining that "[a] floor [of 50%] is not a schedule, and it cedes too much authority to the Bureau of Prisons." *Id.* at 732 (Bye, J., dissenting). Judge Bye's view is consistent with our holding in *Coates.*

Should the defendant's circumstances change after sentencing, § 3664(k) provides that the defendant must—and the Government may—so notify the court, and it may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require."

As Judge Hodges noted in *Prouty,* those statutory provisions do not solve the problem completely, and finding an impermissible delegation under the circumstances of this case may seem illogical or at least inefficient:

> [T]o my mind, that prohibition is entirely illogical when one considers that in many cases—where the defendant has no presently discernable assets and a lengthy term of commitment is imposed—there will be little or no factual basis upon which to fashion a reasoned payment schedule of any kind. To delegate oversight of the payment protocol to the probation officer, amenable to adjustment over time and subject always to judicial approval, would make perfectly good sense. I acknowledge, however, that the statutory scheme also supplies one apparent solution to this problem by (a) providing in 18 U.S.C. § 3664(f)(3)(B) that the court may direct "nominal periodic payments;" and by (b) providing in 18 U.S.C. § 3664(k) that the court may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require" upon learning ... that there has been "a material change in the defendant's economic circumstances." Thus, in a case like this one, the sentencing court could elect to impose nominal payments during the period of incarceration and thereafter until such time as the court is notified ... that there has been a change in the defendant's ability to pay.

303 F.3d at 1256 (Hodges, J., concurring); *see also Overholt,* 307 F.3d at 1256 (suggesting that the practical difficulties with the prohibition against delegation are ameliorated somewhat by the provisions of § 3664 requiring the defendant and the probation office to furnish the court with information regarding the defendant's ability to pay, and by § 3664(k), which allows the court to adjust the payment schedule). Despite these difficulties, however, the result we reach today is compelled by our holding in *Coates* and by the language of the MVRA.

## V. Conclusion

Following our decision in *Gereau,* we hold that the admissibility of Corley's confessions depends on whether they were voluntary within the meaning of § 3501(a)-(b). Finding no error in the District Court's conclusion that the confessions were voluntary, we uphold its decision to allow them into evidence at Corley's trial, and we affirm Corley's convictions.

We also hold that Corley is not entitled to a remand for resentencing under our decision in *Davis* because the District Court correctly treated the Guidelines as advisory and provided a sufficient explanation for the sentence it imposed. In addition, Corley is not entitled to a remand under Fed.R.Crim.P. 32(i)(3)(B) because the District Court did not fail to resolve his objection to the proposed enhancement under U.S.S.G. § 2B3.1(b)(2) in calculating his sentencing range.

Finally, the District Court impermissibly delegated its duty under the MVRA to schedule restitution payments to the Bureau of Prisons (and, in doing so, did not consider Corley's economic circumstances). We therefore remand for the Court to set that schedule under 18 U.S.C. § 3664(f).

SLOVITER, Circuit Judge, dissenting.

The principal issue on this appeal, the amount of time that may elapse before the

arresting officers must present a defendant to a federal magistrate judge, not only divides this panel—it is also the subject of a circuit split. In the past, the permissible scope of post-arrest investigation has been called "the most difficult problem in criminal procedure," 1 Charles Alan Wright, *Federal Practice and Procedure (Criminal)* § 72, at 117 (3d ed.1999) (quoting a draft edition of the American Law Institute's Model Code of Pre–Arraignment Procedure), and it remains a vexing issue.

The District Court concluded that federal law enforcement officers did not unreasonably delay in presenting the appellant, Johnnie Corley, to a federal magistrate judge and it therefore denied Corley's motion to suppress the two statements Corley made before he was brought to the magistrate judge. Because I believe that the majority decision is inconsistent with two Supreme Court decisions that remain viable and precedential and that the majority erroneously interprets the statute enacted after those decisions in a manner that renders much of the statutory language superfluous, I dissent. The majority suggests that my reading of the statute, which accords with that of the Courts of Appeals for the Second, Ninth, and D.C. Circuits, might be the better interpretation of the statute, *see* Maj. Op. at 219, but believes we are bound by one sentence in an earlier opinion. If that is so, it may be appropriate to consider the issue en banc. It is important not only to Corley[17] but to all arresting officers operating in this circuit.[18]

**I.**[19]

A defendant's right to presentment before a neutral judicial officer after the defendant's arrest was first considered by the Supreme Court in *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). In that case, federal officers were investigating the murder of an officer of the Alcohol Tax Unit of the Bureau of Internal Revenue who was killed in the Tennessee mountains while he was seeking a still where illegal whiskey was being made. Attention soon centered on the McNabb family; four of them were arrested on the day after the killing and the fifth surrendered the next day.

They were interrogated sporadically over several days and confessed before being brought before a United States commissioner or a judicial officer some days later.[20] They were tried and three of the five were convicted of second degree murder in federal court, after the trial judge denied their motions to suppress the confessions. When the case came before the Supreme Court, Justice Frankfurter used the opportunity to engage in a discourse with respect to the need for the police to observe the procedural safeguards established by Congress for the effective administration of criminal justice. *Id.* at 347, 63 S.Ct. 608. A federal statute authorizing officers of the Federal Bureau of Investigation to make arrests required that "the person arrested shall be immediately taken before a committing officer." *Id.* at 342, 63 S.Ct. 608 (quoting former 5 U.S.C.

**17.** Corley argues, and the government does not disagree, that there is no evidence independent of the confession of Corley's guilt.

**18.** I accept the majority's statement of the facts, I limit my discussion to the legal issue.

**19.** The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We

have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

**20.** Justice Reed noted in his dissenting opinion that the record did not establish when the petitioners were taken before a committing magistrate. *Id.* at 349, 63 S.Ct. 608.

§ 300a). Nearly all the states had similar legislation. *Id.*

Justice Frankfurter stated, "[p]lainly, a conviction resting on evidence secured through such a flagrant disregard of the procedure which Congress has commanded cannot be allowed to stand without making the courts themselves accomplices in wilful disobedience of law." *Id.* at 345, 63 S.Ct. 608. Although the Court stated that the "mere fact that a confession was made while in the custody of the police does not render it inadmissible," it held that when the evidence was obtained in violation of the defendant's legal rights, it must be excluded. *Id.* at 345–46, 63 S.Ct. 608. The Court thus overturned the conviction.

The advisory committee on the Federal Rules of Criminal Procedure did not immediately codify the *McNabb* decision, as there was significant debate as to the extent of the holding. *See* 1 Wright, Fed. Prac. & Pro. § 72, at 119–23. In 1946, more than a decade after the *McNabb* decision, Rule 5(a) of the Federal Rules of Criminal Procedure was finally adopted. Professor Wright states that "[t]he requirement of Rule 5(a) that an arrested person be taken before the commissioner—or magistrate judge as he is now called—'without unnecessary delay' was once the most controversial provision of the Criminal Rules." *Id.* at 117. That Rule now provides that "[a] person making an arrest within the United States must take the defendant *without unnecessary delay* before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise." Fed.R.Crim.P. 5(a)(1)(A) (emphasis added). The advisory committee's note explains that this language "reflects the view that time is of the essence." Fed. R.Crim.P. 5 advisory committee's note.

Shortly after the adoption of Rule 5(a), the Supreme Court confirmed that confessions obtained when a defendant was not brought promptly before a committing magistrate are inadmissible under the *McNabb* rule. *See Upshaw v. United States,* 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948). Although the Court had previously stated in *United States v. Mitchell,* 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944), that a confession made within a few minutes after the defendant was taken to the police station was admissible, even though the defendant was thereafter held eight days before being taken to a committing magistrate, the *Upshaw* Court rejected the court of appeals' interpretation of *McNabb* as holding that a confession voluntarily given is admissible in evidence. Instead, the Court in *Upshaw* explained that the *Mitchell* confession had been made before any illegal detention had occurred. It stated that, in contrast, it was clear that the delay in bringing Upshaw promptly before a committing magistrate was for the purpose of securing the confession, a purpose inconsistent with the requirement to bring the defendant before the magistrate "without unnecessary delay" as required by Rule 5(a). It reaffirmed that "confessions thus obtained are inadmissible under the *McNabb* rule." *Id.* at 414, 69 S.Ct. 170.

Professor Wright notes that even after the *Upshaw* decision, "the lower courts continued to be uncertain about the reach of the exclusionary rule, and were reluctant to believe that mere delay in bringing a defendant before a commissioner could, without more, prevent use of a confession obtained in the interim." 1 Wright, Fed. Prac. & Pro. § 72, at 124. The decision in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), resolved some of the confusion as to the meaning of the exclusionary rule first announced in *McNabb.*

Mallory was convicted by a jury in the United States District Court for the District of Columbia of rape and sentenced to death. He argued that his confession, obtained by the police following a detention of some seven hours, should be suppressed because he was not brought before a commissioner until the next morning, and the police did not attempt to reach a commissioner until seven and a half or eight hours after his arrest, when the commissioner was no longer available. In its decision, the Supreme Court reviewed what it characterized as the "plainly defined" scheme for initiating a federal prosecution:

> The police may not arrest upon mere suspicion but only on "probable cause." The next step in the proceeding is to arraign the arrested person before a judicial officer as quickly as possible so *that he may be advised of his rights and so that the issue of probable cause may be promptly determined.* The arrested person may, of course, be "booked" by the police. But he is not to be taken to police headquarters in order to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.

*Id.* at 454, 77 S.Ct. 1356 (emphasis added).

The Court noted that an earlier arraignment[21] could easily have been had in the same building in which the police headquarters were housed, and rejected the explanation that the police were merely trying to check on the information given by the petitioner. The Court held it was error not to have suppressed Mallory's confession.

It should be noted that the defendants in *McNabb, Upshaw,* and *Mallory* had not been advised of their rights. Those cases were all decided before the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which alleviated some of the problems identified in those decisions. Nonetheless, the significance of prompt presentation to a magistrate judge is not diminished.

After the *Mallory* decision, Congress turned its attention to the issue of pre-presentation delay and, in particular, to the admissibility of confessions by detained arrestees who were not brought before a judicial officer without unreasonable delay. In the original draft of what was later enacted as Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 3501–3502, voluntariness was the only criterion for admission of such confessions. *See United States v. Superville,* 40 F.Supp.2d 672, 682–83 (D.V.I. 1999) (discussing legislative history). However, amendments made on the Senate floor restored the essence of the *McNabb–Mallory* exclusionary rule. Thus, the federal statute, codified in 18 U.S.C. § 3501, was enacted essentially as it appears today.

18 U.S.C. § 3501(a) provides that "In any criminal prosecution brought by the United States or by the District of Columbia, a confession . . . shall be admissible in evidence if it is voluntarily given."[22] Sub-

---

**21.** The Wright treatise suggests that the term "arraignment" is more properly confined to the proceeding covered in Rule 10 when defendant is read the charges and enters a plea, but it states that "the other usage has now become so common that there is little likelihood it will be abandoned." 1 Charles Alan Wright, Fed. Prac. & Pro. § 71, at 115.

**22.** Subsection (a) provides in full: "In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge deter-

section (b) provides that "[t]he trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession," and sets forth five factors that "need not be conclusive on the issue[.]" 18 U.S.C. § 3501(b).[23]

Finally, subsection(c), the section of principal relevance to us today, provides a safe harbor, stating, in relevant part:

> In any criminal prosecution by the United States ..., a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury *and if such confession was made or given by such person within six hours immediately following his arrest or other detention: Provided,* That the time limitation contained in this sub-

section shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

18 U.S.C. § 3501(c) (emphasis added).

As the court aptly noted in *Superville,* "Congress flatly refused to 'overrule' *McNabb* or *Mallory* .... and 18 U.S.C. § 3501(c) only excised the first six hours after arrest or detention from the scope of the *McNabb–Mallory* exclusionary rule." 40 F.Supp.2d at 683.

The majority chooses not to dispute Corley's argument that the District Court erred in concluding that the agents' interrogation was within that six-hour safe-harbor period. *See* Maj. Op. at 220 note 7. As the majority opinion notes, Corley was arrested at 8:00 a.m. and was taken to the Sharon Hill police station for processing. He was then escorted at approximately 11:45 a.m. from the police station to the hospital where he was admitted at 12:12

---

mines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." Subsection (e) in turn explains that, "[a]s used in this section, the term 'confession' means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing."

23. Subsection (b) provides in full: "The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made

after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession."

p.m. [4 hours and 12 minutes after the arrest]. He was discharged from the hospital at approximately 3:20 p.m. after receiving five sutures. [7 hours and 20 minutes after the arrest]. Corley arrived at the Philadelphia Federal Bureau of Investigation office at 3:30 p.m. [7½ hours after the arrest]. At 5:07 p.m., the officers advised Corley of his *Miranda* rights, and he was given the advice of rights form. From 5:27 p.m. through 6:38 p.m., Corley orally confessed to the June 16, 2003 bank robbery. [Confession began 9 hours, 27 minutes after the arrest].

It is evident that Corley's first confession was not made within six hours of his arrest as that period expired at 2:00 p.m. In reaching its conclusion that Corley's confession fell within the safe-harbor period, the District Court excluded the time during which Corley was treated at the hospital. There is no legal basis for that exclusion. The statute does not provide an exception for emergency visits to the hospital.[24] There is only one statutory proviso to the safe harbor, and that proviso states that the six-hour time limitation "shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer." 18 U.S.C. § 3501(c). The government does not contend that the delay in presenting Corley to the Magistrate Judge was related "to the

means of transportation and the distance to be traveled to the nearest available magistrate."

The District Court also stated that the delay in presenting Corley to the Magistrate Judge was not "unnecessary" for the purposes of Rule (5)(a) because Corley requested the break after beginning his confession. App. at 6. Once again, there is no statutory provision that time requested by the defendant should be excluded from the six-hour safe harbor. Indeed, at the argument before us the government retreated from the position taken in its brief and conceded that the District Court erred in concluding that the statement was made within the safe harbor. I therefore believe that the safe-harbor period should be deemed expired. The remaining question, therefore, is whether Corley's confession was nonetheless admissible.

The majority adopts the government's argument that even if the confession was not forthcoming within the six-hour safe-harbor period provided in 18 U.S.C. § 3501(c), Corley's confession was admissible because it was voluntary.[25] It is, of course, a *sine qua non* that a confession must be voluntary before it can be admitted into evidence. *Crane v. Kentucky*, 476 U.S. 683, 687–88, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Jackson v. Denno*, 378 U.S. 368, 376–77, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The converse does not follow.

I find irrefutable Corley's argument that if a confession only had to be voluntary to

---

24. Even were the time spent receiving medical treatment excluded in calculating the expiration of the safe-harbor period, the confession would nonetheless fall outside that period. The District Court excluded the twenty-seven minute period—11:45 a.m. to 12:12 p.m.—necessary to transport Corley from the police station to the hospital. Because the hospital is less than a mile away from the F.B.I. office where Corley was tak-

en, the agents would have traveled approximately the same distance over approximately the same time period.

25. The Assistant U.S. Attorney stated: "things may not be able to happen in six hours and that's why 3501 makes admissible confessions dependent on their voluntariness." Mar. 6, 2007 Oral Argument Tr. at 33.

be admissible despite the delay in presentation to a magistrate judge, there would be no reason for 18 U.S.C. § 3501(c) because voluntariness is already covered in § 3501(a) and (b). Section 3501(a) expressly states that a confession shall be admissible if it is voluntarily given. In its compelling statutory analysis, the court in *Superville* rejected the government's contention "that the sole test under 18 U.S.C. § 3501 for admission of any defendant's post-arrest statements is whether the defendant voluntarily confessed, and delay in presentation is only one factor in this determination." 40 F.Supp.2d at 681. The court noted that "[i]f every voluntary confession were admissible, as section 3501(a) read alone appears to require, there would be no need for section 3501(c) to provide that voluntary statements obtained in the first six hours following arrest or detention cannot be suppressed for pre-presentation delay. Subsection (c) would be entirely superfluous." *Id.* Other courts have recognized the same. *See United States v. Wilbon,* 911 F.Supp. 1420, 1426 (D.N.M. 1995) ("It is completely illogical to interpret subsection (c) as providing that voluntariness is the sole test" because the "time limitation and the accompanying proviso would be totally superfluous."); *accord United States v. Erving,* 388 F.Supp. 1011, 1016 (W.D.Wis.1975). The majority recognizes that both the Courts of Appeals for the Second Circuit and the Ninth Circuit have agreed with this interpretation of the statutory language. I discuss those cases in detail hereafter.

The government did not provide a persuasive response to this court's question at oral argument: "If (a), which talks about voluntariness, is it, why don't you just stop there? Why did they do a (c) where they

talk about a safe harbor for delay? Why is there a (c) at all?" Mar. 6, 2007 Oral Argument Tr. at 33. The government's only response was to refer us to a statement in our opinion in *Gov't of the V.I. v. Gereau,* 502 F.2d 914 (3d Cir.1974), where we upheld the convictions of five defendants for murder, assault and robbery following a jury trial. A group of young men had entered the clubhouse area of the Fountain Valley Golf Course in St. Croix armed with a variety of weapons, including a machine gun, robbed some of the guests and killed eight persons. It is undoubtedly difficult after more than 35 years to recreate the agitation and ferment the killings caused in the Virgin Islands, the Caribbean area generally, the United States and the tourist industry. This was only partially abated by the time of the trial and the appeal. All but one of the challenges raised by defendants to their convictions were rejected on appeal.[26]

The opinion of this court covered a wide range of issues. Most of the opinion addressed the validity of the searches and the failure to suppress the evidence seized, but it also covered the initial warrantless arrest of defendant Gereau, the sufficiency of the evidence, the motions to disqualify the trial court, a challenge to a juror for bias, the trial court's instructions to the jury regarding the voluntariness of the confessions and continuing deliberations, and the sentencing. *Gereau,* 502 F.2d at 921–22, 924–37. Slightly more than one paragraph of the lengthy opinion was focused on the admissibility of Gereau's statement given more than six hours after he was arrested and before he (and his codefendants) were presented to a magistrate. *Id.* at 924.

---

26. The court remanded for reconsideration of the trial court's denial of defendants' motion for a new trial, and directed the trial court to review the record of the hearing under a de novo standard. 502 F.2d at 936–37.

On appeal, this court held that defendants had not demonstrated clear error in the district court's factual finding that Gereau's confession was voluntary. *Id.* at 924. Instead, the focus of this portion of the opinion was the effect of the recent statute codified in 18 U.S.C. § 3501 on the admissibility of Gereau's confession in light of his claim of pre-arraignment delay. Much of the analysis in *Gereau* on that issue remains applicable and indisputable today, including the statements that "confessions are admissible if voluntarily given" and "in determining voluntariness the trial judge shall take into consideration all relevant circumstances including the time between arrest and arraignment (where, as here, the challenged statements were made within that time), whether defendant knew he was suspected of the crime concerned when he made his statement, whether defendant was informed that he was not required to make a statement and that he had a right to counsel." *Id.* at 923. As authority for these propositions, the *Gereau* court cited 18 U.S.C. § 3501(a) and (b).

The opinion then reviewed the requirements of the safe-harbor provision as set forth in 18 U.S.C. § 3501(c), which it summarized by stating that the "express declaration of § 3501(c) makes clear that a statement voluntarily given within six hours of arrest is not excludable because of delay in presentment after the statement was given." *Id.* at 924. The court declined to draw the negative implication that statements given before presentment but more than six hours after arrest must be excluded unless due to transportation problems, and then stated, in the two sentences on which the government places its entire reliance, "Section 3501 makes admissibility of confessions dependent on their voluntariness. Delay in a defendant's presentment to a magistrate is only one factor relevant to voluntariness." *Id.*

If the majority is correct that "subsection (a) makes voluntariness the sole criterion for admissibility of a confession," Maj. Op. at 217, notwithstanding the length of the delay before the defendant is presented to the magistrate judge, not only would subsection (c) be superfluous, as many courts have noted, but the *Gereau* court's own preceding analysis would have been superfluous. In that discussion, only several paragraphs before the sentences at issue, the *Gereau* court stated "in determining voluntariness the trial judge shall take into consideration all relevant circumstances including the time [elapsing] between arrest and arraignment (where, as here, the challenged statements were made *within that time* ) . . . ." *Id.* at 923. A subsequent sentence clarifies that "within that time" refers to the safe-harbor period. *Id.* Because the court omitted from its definition of voluntariness consideration of whether the defendant's statement was made beyond the six-hour safe-harbor period, it would be inconsistent to interpret the opinion as holding that voluntariness alone supports admission of a confession made beyond the safe-harbor period. I decline to take the one sentence relied on by the majority out of context.

In its statutory analysis, the majority completely overlooks the significance of the statutory "and" in subsection (c) which, focusing on the relevant language, states that a confession "shall not be inadmissible solely because of delay" in presentment if such confession is found "to have been made voluntarily . . . and if such confession was made or given by such person *within six hours immediately following* his arrest or other detention." 18 U.S.C. § 3501(c) (emphasis added). If voluntariness is all, I ask the majority, how does it explain the "and" which explicitly makes admissibility of a confession dependent on

both voluntariness and presentment within six hours of defendant's arrest?

A plausible explanation for the inexplicable statement in *Gereau* was provided by the court in *Superville*, 40 F.Supp.2d at 687, which noted that *Gereau* relied on opinions of two other Courts of Appeals both of which have since modified their interpretation of § 3501. The *Gereau* opinion cited the Second Circuit's opinion in *United States v. Marrero*, 450 F.2d 373 (2d Cir.1971), for its focus on voluntariness. More than a decade after the Second Circuit's decision in *Marrero*, the court reexamined the issue in *United States v. Perez*, 733 F.2d 1026 (2d Cir. 1984). The *Perez* district court had determined that the delay in failing to present Perez, who was arrested at 3:25 p.m., to a magistrate judge before 2:30 p.m. the following day was unnecessary and unreasonable. *Id.* at 1027–28. The court noted that a magistrate judge was available for defendant's presentment until 6:25 p.m. on the day of the arrest and the government had failed to advance a compelling reason for not presenting defendant sooner than it did. *Id.* at 1035. On appeal, the Second Circuit rejected the argument that the voluntariness of the confession rendered it admissible. The court explained that "[w]here there has been a determination . . . that the delay in excess of six hours is unnecessary and not reasonable, nothing in our prior cases requires that the confession obtained was 'involuntary.'" *Id.* Rather, "section 3501 legislatively overruled the *McNabb–Mallory* rule only to the extent of (1) unreasonable pre-arraignment, pre-confession delays of less than six hours and (2) reasonable delays in excess of six hours." *Id.* In so holding, the court noted the independence of the safe-harbor provision from the remainder of the statute. *Id.* at 1030–31, 1034.

Similarly, the *Gereau* opinion cited *United States v. Halbert*, 436 F.2d 1226, 1232–37 (9th Cir.1970), to support its statement about voluntariness, but the Ninth Circuit, like the Second Circuit, revised the approach it took earlier. In *United States v. Alvarez–Sanchez*, 975 F.2d 1396, 1400–01 (9th Cir.1992), *rev'd on other grounds*, 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994), the court rejected a literal interpretation of § 3501(a). It stated, "in light of the provisions of § 3501(c), there must be circumstances in which delay in arraignment will require suppression of a confession regardless of the voluntariness of the confession." *Id.* at 1401. These subsequent decisions from our sister circuits interpreting the cases on which we relied in *Gereau* are persuasive. I would therefore hold that the standard gleaned from the statute, Rule 5(a), and *McNabb* and *Mallory* is that even a voluntary statement may be excluded if the presentment delay is unreasonable or unnecessary.

The enactment of § 3501 does not displace Rule 5(a) and therefore the standard established in Rule 5(a) that an arrestee must be taken to a magistrate judge "without unnecessary delay" remains effective. The courts have generally equated "unnecessary" to "unreasonable," and I would do the same, noting that § 3501 also uses "reasonable" as a standard. The District Court found that the delay in presenting Corley to a magistrate judge was not "unnecessary" or "unreasonable." App. at 7. Nothing in the record supports such a finding.

Because I have already discussed, and rejected, the government's contention that the time for Corley's hospital visit should be deducted from the six hours provided by the statute as a safe harbor, I must next consider the separate question whether the time spent in connection with Corley's hospital visit renders the delay in

presenting Corley to a magistrate judge "necessary" and "reasonable," and hence not subject to the interdiction of "unnecessary delay" within the meaning of Rule 5(a). I recognize that there may be situations when the arrestee is in dire medical circumstances, and must be seen promptly in an emergency room. Certainly, in such a situation, delay occasioned by the need for immediate medical service would be a factor in considering whether the delay in presentation was "necessary." Corley's condition was not a medical emergency. He received stitches and medicine at the hospital and was sent on his way. There was no evidence that he was not fully alert and mobile.

Even if the delay in Corley's presentment was required because of his need to get medical treatment, the government has not explained why it did not bring him to the hospital earlier in the day or why it could not have presented Corley to a nearby magistrate judge immediately following his discharge from the hospital. The government does not suggest, nor could it, that there were no magistrate judges available. At the time of his arrest, the chambers of the magistrate judges and their courtrooms were in the same building as the offices of the FBI.

One of the reasons, and apparently the only reason, for the delay following Corley's hospital discharge was candidly given by one of the arresting officers. Trooper D'Angelo testified:

Q [W]as Mr. Corley taken before a Federal Magistrate to be advised of the complaint against him for the assault of the Federal Officer ...?

A Not ... on the 17th of September, no.

Q ... Instead what happened was you stated your desire to Mr. Corley that you wanted to question him about his participation in this bank robbery, is that a fair statement?

A Yes, we al—yes.

App. at 78. In response to the question whether he wanted Corley to confess to the robbery, D'Angelo answered: "Absolutely." App. at 92.

The desire to exact a confession is neither an accepted nor an acceptable excuse for the failure to take a defendant to a magistrate judge. Congress provided law enforcement authorities a window consisting of the six-hour safe-harbor period during which they may interrogate the defendant at will and attempt to persuade him or her to provide information about the alleged crime. But if they exceed the six-hour period, and fail to transport the defendant to a magistrate judge, they may not avoid the sanction of suppression of the confession on the ground that they were merely developing the required evidence. *See Ricks v. United States*, 334 F.2d 964, 968–69 (D.C.Cir.1964) ("Nor can the delay of a preliminary hearing be justified on the ground that police activity for that period was required to investigate other unsolved crimes for which there was no probable cause to arrest the accused..... [N]either the Assistant [United States Attorney]'s advice nor the posited inaccessibility of a committing magistrate licensed the police to continue 'to carry out a process of inquiry that lends itself, even if not so designed, to eliciting damaging statements to support the arrest and ultimately his guilt.'") (quoting *Mallory*, 354 U.S. at 454, 77 S.Ct. 1356); *Ginoza v. United States*, 279 F.2d 616, 621 (9th Cir. 1960) (confession inadmissible because delay designed to enable officers to obtain oral confession).

The Supreme Court was explicit on this issue in its decision in *Mallory*, where it stated that any necessary delay in presentation "must not be of a nature to give

opportunity for the extraction of a confession." 354 U.S. at 455, 77 S.Ct. 1356. The government has not suggested any legitimate basis for the delay; there was no transportation difficulty, no urgent medical need, and no unavailable magistrate judge. Because the safe-harbor period had expired, it follows that application of the *McNabb–Mallory* rule required suppression of Corley's confessions.

Corley's counsel argued that the confession was the only evidence presented against Corley. The government has not made its position on that fact explicit. If we were to remand, as I would do, I would leave that determination to the District Court on remand.

I recognize that law enforcement officials and government lawyers may believe that once a defendant is brought before a magistrate judge, the defendant will decline to make a statement (in the vernacular, "lawyer up"). The possibility of that result is no reason to forgo the important function served by the magistrate judge in advising the defendant of his or her rights. The *Miranda* rule requires the arresting officers to provide that information, but the legal rules have been formulated to place more reliance on the statement of rights given by a neutral magistrate judge.

Suppression of the evidence of a confession may lead to the frustrating outcome, in some cases, of overturning a conviction. In *McNabb*, the Supreme Court ordered the suppression of the confessions of defendants who murdered a federal officer. In *Mallory*, the Supreme Court ordered the suppression of the confession of a defendant who was sentenced to death for rape. We can do no less in the case of a convicted bank robber. As the Court in *McNabb* stated, "[j]udicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence." 318 U.S. at 340, 63 S.Ct. 608.

## II.

For the reasons set forth above, I dissent from the majority's judgment affirming the decision of the District Court.